**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 1 5 2020

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

C.P., Individually and                    §
as Parent and Next Friend of J.P.        §
                                          §
                                          §
                                          §
**Plaintiff**                             §
                                          §
v.                                        §
                                          §        CIVIL ACTION NO.
                                          §
JOHNNY KEY, In his Official               §        4:20-cv-1233-KGB
Capacity as Commissioner of               §
Education And Secretary of the            §
Arkansas Department of                    §
Education                                 §        This case assigned to District Judge Baker
                                          §        and to Magistrate Judge Kearney
**AND**                                   §
                                          §
CABOT SCHOOL DISTRICT,                    §
                                          §
**Defendants**                            §
                                          §
                                          §
                                          §

---

# COMPLAINT

---

C.P., Individually and as Parent and Next Friend of J.P., for her Complaint

states:

## I.  INTRODUCTION

1.      Plaintiff C.P., as Parent and Next Friend of J.P., brings this action against Johnny Key, in his official capacity as Commissioner of Education and Secretary of the Arkansas Department of Education ("ADE"), and the Cabot School District ("CSD").

2.      Plaintiff seeks relief pursuant to: (1) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, *et seq.*, for depriving J.P. of his right to a free appropriate public education ("FAPE"); (2) 42 U.S.C. §1983 ("§1983") for denying Plaintiff of her right to due process pursuant to the Fourteenth Amendment; (3) 29 U.S.C. §701, *et seq.* ("§504"), 42 U.S.C. §§12131-12165 ("Title II"), for disability discrimination; and, (4) 28 U.S.C. §§2201, 2202, for declaratory and related relief.

## II.  PARTIES

3.      Plaintiff is a proper party to bring this action as the parent and next friend of J.P. *See* Fed. R. Civ. P. 17(c)(2). J.P. is a minor with a date of birth of 1 April 2010.

4.      J.P. is a child with a disability as defined by the IDEA. *See* 20 U.S.C. §1401(3). J.P. is an individual with a disability as defined by §504. *See* 29 U.S.C. §705(20).  J.P. is a qualified individual with a disability as defined by Title II. *See* 20 U.S.C. §12131(2).

5.      J.P. resides in the CSD, and the CSD remains responsible for providing J.P. a FAPE. *See* Ark. Code Ann. §6-41-202(a)(2) (responsibility for a FAPE assigned to "appropriate school district"); §6-18-202 (school district based on residency).

6.      Because CSD has not offered J.P. an IEP that will provide her a FAPE, J.P. has exercised her right to unilaterally withdraw J.P. from CSD, to enroll her in a private school, and seek tuition reimbursement from CSD pursuant to 20 U.S.C. §1412(a)(1)(C).

7.      The CSD is a public corporation that can be sued in its own name. Ark. Code Ann. §6-13-102(a). The CSD is a local education agency ("LEA") as defined by the IDEA. *See* 20 U.S.C. §1401(19). The CSD is a program or activity receiving federal financial assistance as defined by §504. *See* 20 U.S.C. §794(b). The CSD is public entity as defined by Title II. *See* 42 U.S.C. §12131(1).

8.      Secretary Key is responsible for ADE, and ADE is the State Education Agency ("SEA") responsible for implementation of the IDEA in Arkansas, including the procedural safeguards described in 20 U.S.C. §1415.

9.      ADE is ultimately responsible for ensuring that all children with a disability in Arkansas receive a FAPE. *See* 20 U.S.C. §§1401(32), 1407, 1412(a)(6)(A), 1412(a)(11)(A); 34 C.F.R. §§ 300.101 and 300.600(a); Ark.

3

Code Ann. §§6-41-202(e); and, ADE Spec. Ed. Rules §2.71 ("The SEA in Arkansas is the Arkansas Department of Education.").

10.     ADE is a program or activity receiving federal financial assistance as defined by §504. *See* 20 U.S.C. §794(b). ADE is public entity as defined by Title II. *See* 42 U.S.C. §12131(1).

### III.  JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 20 U.S.C. §1415(i)(2) to review the record of the due process hearing and grant "appropriate" relief – in this case, vacating the hearing officer's final order and remanding the case to ADE.

12.     This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(a), §1983, §504 and Title II to decide whether the CSD and ADE acted in bad faith or deliberate indifference and denied Plaintiff her right to due process pursuant to the Fourteenth Amendment.

13.     This Court is the proper venue for Plaintiff's claims. *See* 28 U.S.C. §1391(b). Key resides in Pulaski County, Arkansas. The ADE is located in Pulaski County. ADE's acts and omissions at issue occurred in Pulaski County. CSD is located in Lonoke County Arkansas. Pulaski and Lonoke counties are in the Eastern District of Arkansas, Central Division. *See* 28 U.S.C. §83(a)(1).

### IV.  PROCEEDINGS BELOW

14.    Attached hereto as **Exhibit A** is the ADE Due Process Hearing Record in ADE Case No. H-21-04 (redacted).

15.    On 13 August 2020, Plaintiff file a due process complaint with ADE against CSD. **Exhibit A, p. 48**.

16.    ADE assigned the complaint to a due process hearing officer, Michael McCauley. **Exhibit A, p. 45**.

17.    CSD responded to Plaintiff's due process complaint generally denying Plaintiff's allegations and moved to dismiss Plaintiff's complaint alleging CSD was no longer responsible for providing J.P. a FAPE because J.P. had enrolled in another *school district*. *See* **Exhibit A, p. 6** (right to due process hearing "is forfeited when a student *changes school districts* prior to requesting a due process hearing.") (emphasis supplied).

18.    Plaintiff denied enrolling J.P. in another school district; rather, Plaintiff enrolled J.P. in a private school and filed a due process complaint seeking tuition reimbursement from CSD pursuant to 20 U.S.C. §1412(a)(1)(C). *See* **Exhibit A, p. 18**.

19.    On 3 September 2020, Plaintiff filed a motion asking McCauley to take judicial notice of the fact that the private school was *not* a "school district." *See* **Exhibit A, p. 3**. McCauley did not rule on this Motion.

20.    On 3 September 2020, McCauley dismissed Plaintiff's due process complaint with prejudice without making any findings of fact or explaining his decision. *See* **Exhibit A, p. 1**.

21.    On 9 September 2020, Plaintiff received a copy of McCauley's final decision sent by U.S. mail. *See* **Exhibit A, p. 1**.

## V. CLAIMS

### COUNT I - IDEA Review

22.    The IDEA allows a party to seek review of an ADE due process hearing officer's decision in federal district court. 20 U.S.C. § 1415(i)(2)(A) & (3)(A). In reviewing a hearing officer's decision, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415.

23.    On this record, the "appropriate" relief is vacating the hearing officer's decision and remanding the case to ADE with instructions to assign the case to another due process hearing officer for appropriate action consistent with the law and the facts.

24.    The hearing officer's final order should be vacated because the hearing officer failed to make findings of fact or explain his decision as

6

required by the IDEA and ADE Special Education Rules ("ADE Spec. Ed. Rules").[1]

25.     The hearing officer below was Michael McCauley. McCauley has a pattern and practice of *not* making findings of fact or explaining his decisions as required by the IDEA and ADE Spec. Ed. Rules (discussed, *infra*). Plaintiff incorporates by reference McCauley's decisions in the following ADE due process cases over which he presided: H-20-05, H-19-24, H-18-30, H-18-21, H-18-13, H-17-08, H-16-44, H-16-40, H-16-21, H-16-14, H-15-23 and H-13-24 (collectively referred to as "McCauley's Decisions"). These are publicly available on ADE's website.[2]

26.     In *Does v. Vilonia Sch. Dist.*, E.D. Ark., No. 4:18-cv-855, the district court reversed McCauley, and in so doing, described McCauley's final order as follows:

The officer made no credibility determinations. On the law, he found no procedural or substantive IDEA violation. His conclusions, however, contain no 'why' – no reasoning or explanation for the decisions reached. The result is akin to a general verdict. The Court has considered remanding for more specifics. But B.H. is now a fourth grader, the Court has been tardy in

---

[1] http://dese.ade.arkansas.gov/divisions/learning-services/special-education/policy-regulations/state-rules-regulations/sections-1-to-30

[2] http://dese.ade.arkansas.gov/divisions/learning-services/special-education/dispute-resolution/due-process-hearings

deciding this case, and the parties need a final answer sooner rather than later. The Court will therefore proceed . . .

*Id.,* Dkt. No. 23, p. 2 (March 10, 2020). This is one example of McCauley's pattern and practice of issuing final decisions "akin to a general verdict." *Id*.

27.     Moreover, McCauley's "general verdicts" are almost always in favor of the school district reflecting a bias against parents. McCauley's bias against parents and general incompetence is currently the subject of a federal lawsuit seeking the same relief sought by Plaintiff in this case – a finding that McCauley is biased and unqualified and having him removed as an ADE impartial hearing officer. *See Does v. Johnny Key*, E.D. Ark., No. 4:20-cv-00104-BSM, Dkt. No. 14 (September 1, 2020) (Order denying Motion to Dismiss); 20 U.S.C. §1415(f)(3)(A) (hearing officer qualifications); 34 C.F.R. §300.511(c) (same); ADE Spec. Ed. Rules §10.01.21 (same).

28.     McCauley knows that the IDEA and ADE Spec. Ed. Rules require written findings of fact and decisions, but he has consistently failed and refused to make findings of fact and/or explain his decisions. *See McCauley's Decisions*.

29.     The IDEA's "Parental rights at hearing" include the right to "written . . . findings of fact and decisions." 20 U.S.C. §1415(h)(4). *See* 34 C.F.R. §300.512(a)(5), (c)(3).

30.     ADE Spec. Ed. Rules similarly require a written record "of the

hearing, findings of fact, and decisions . . ." §10.01.15.2. *See* ADE Spec. Ed.

Rules §§10.01.39.2 (same). However, ADE Spec. Ed. Rules provide further

guidance requiring that "findings of fact shall be limited to the facts that

were supported by the evidence and upon which the hearing officer based

any portion of his decision." §10.01.39.3 (internal punctuation omitted). By

implication, an ADE impartial due process hearing officer "shall" make

findings of fact "upon which the hearing officer based any portion of his

decision." *Id.*

31.     As to orders, ADE Spec. Ed. Rules provide, "Any orders resulting

from the hearing decision shall be issued in concise language, address any

violations noted in the hearing decision, and mandate definite action to

remedy any violations." §10.01.39.4 (internal punctuation omitted).

32.     ADE prepared and published an *Independent Hearing Officer

Procedural Guide*, available on the ADE website.[3] It includes a statement of

the "Rights of Parents" that includes parents' right to "findings of fact and

decisions." ADE IHO Guide, p. 24. As to a hearing officer's final order,

ADE advises hearing officers:

Following the close of the hearing, the Hearing Officer must issue a
written final decision and order that states concisely and explicitly the

---

[3]  https://arksped.k12.ar.us/documents/disputeresolution/hearings/IHO-Guide.pdf

findings of fact and conclusions of law. The final decision should not be abstract and should not be a summary of the testimony at the hearing.

The final decision must contain findings of fact, the decision(s), and any orders resulting from the final decision. The findings of fact are limited to the fact that were supported by the evidence and upon which the hearing officer based any portion of the final decision. Any orders resulting from the final decision must be issued in concise language, address any violations noted in the final decision, and mandate definite action to remedy those violations. The final decision should cite to on point precedent and law to support conclusions of law.

ADE IHO Guide, p. 31.

33.     McCauley's final order in this case does not comply with the IDEA and ADE Spec. Ed. Rules because it fails to include findings of fact and conclusions of law, and accordingly, McCauley's final order should be vacated and the case remanded to ADE. *See Lathrop R-II Sch. Dist. v. Gray*, 611 F.3d 419, 423 (8th Cir. 2010) (noting district court first vacated and remanded the case for application of correct burden of proof); *West Platte R-II Sch. Dist. v. Wilson*, 439 F.3d 782, 785 (8th Cir. 2006) (instructing district court to remand the case to due process hearing panel for application of correct burden of proof).

34.     On remand, ADE should be instructed to assign this case to a due process hearing officer *other than McCauley*.

10

35.    McCauley lost jurisdiction of the case when he issued his final decision. *See* ADE Spec. Ed. Rules §10.01.39.5 ("In no event shall a hearing officer retain jurisdiction over the parties to the hearing after the hearing decision has been issued."). Thus, upon remand, ADE should assign the case to a hearing office pursuant to its normal procedures. ADE currently has three hearing officers so McCauley most likely will *not* be assigned to the case, even if not barred from hearing the case. Even so, this Court should bar McCauley from hearing this case on remand.

36.    Plaintiff has a right to an impartial due process hearing officer. *See* 20 U.S.C. §1415(f)(3)(A) (hearing officer qualifications); 34 C.F.R. §300.511(c) (same); ADE Spec. Ed. Rules §10.01.21 (same).

37.    ADE's *Independent Hearing Officer Procedural Guide* provides, "Both parties also have a right to an impartial Hearing Officer . . . ." ADE IHO Guide, p. 23.

38.    McCauley is *not* an *impartial* hearing officer because he has demonstrated a clear bias against parents and in favor of school districts. *See McCauley's Decisions*.

39.    McCauley has demonstrated his bias against parents by failing to recuse himself -- even when he acknowledged a conflict – in violation of ADE Spec. Ed. Rules §10.01.24, which provides:

> The hearing officer shall disqualify himself from presiding over any case in which he has a personal or professional interest which might conflict with the hearing officer's objectivity in the hearing. The Department shall appoint a replacement hearing officer pursuant to the IDEA and these procedures.

§10.01.24. Thus, ADE Spec. Ed. Rules §10.01.24 gives the hearing officer ***no discretion*** – he "shall disqualify himself" where his objectivity might reasonably be questioned.

40.    In *Parrish v. Bentonville Sch. Dist.*, No. 5:15-CV-05083, 2017 WL 1086198, at *35 (W.D. Ark. Mar. 22, 2017), aff'd, 896 F.3d 889 (8th Cir. 2018), McCauley violated the IDEA and ADE rules by failing to recuse himself despite having a conflict of interest – his daughter went to work for the school district. The district court explained, "McCauley likely should have recused himself and his failure to do so would be problematic if he had completed the hearing and entered a final opinion and order in the matter." *Id.*[4] As the district court noted, if McCauley continues to fail to recuse himself when conflicted, it "increases the likelihood that a due process violation will occur in the future." *Id.*

---

[4] Undersigned counsel was forced to dismiss her client's due process complaint and file a new due process complaint to avoid a conflicted McCauley from hearing the case. This was fundamentally unfair and denied parents due process of law pursuant to the Fourteenth Amendment of the Constitution.

41.     McCauley's pattern and practice of *not* making findings of fact or

explaining his decisions is a manifestation of his bias against parents.

McCauley always rules in favor of school districts or otherwise denies

parents the relief sought, and he knows a lack of findings and conclusions

makes it much more difficult for parents to get him reversed upon review by

a district court because of the deference afforded him.

42.     For example, in reviewing McCauley's decision in H-15-23, the

district court's deference to this hearing officer essentially defeated the

parents' claim. The district court explained:

> The hearing officer in this case did not make an explicit credibility
> determination as to Dr. Edwards' and Ms. Hernandez's testimony
> regarding requests for ABA therapy to be implemented into E's
> classroom experience. Nor did the hearing officer make a finding on
> the issue of whether ABA therapy should have been provided to E
> under the IDEA. However, he listened to each witness, had "an
> opportunity to observe the demeanor of the witnesses," reviewed the
> evidence presented in the transcript of the hearing, and determined
> that Rogers School District provided E with a FAPE (AR at 138-39).
> *CJN*, 323 F.3d at 636. The Court cannot "substitute [its] own notions
> of sound educational policy for those of the school authorities which
> they review." *CJN*, 323 F.3d at 636.

*Edwards v. Rogers Sch. Dist.*, 4:16-cv-00021-KGB, Dkt. No. 55, p. 15 (March 31,

2019). Hence, parents are effectively denied due process of law and district court

review where a district court defers to a hearing officer simply because he "listened to each witness."

43.     McCauley's bias in favor of school districts reflects his personal, pecuniary interest in continuing to contract with ADE to work as a due process hearing officer.

44.     McCauley knows that ADE cancelled the contract of another due process hearing officer, Dr. Robert Doyle, shortly after he ruled in favor of parents in a high-profile case. *See Vilonia Sch. Dist. v. M.S.*, No. 4:18-CV-00219-KGB, 2019 WL 4853620, at *22 (E.D. Ark. Sept. 30, 2019) (affirming Doyle's decision).

45.     In contrast to McCauley, the ADE cancelled Doyle's contract after *36 years* as a hearing officer. Doyle's contract was cancelled because "your decisions lack sufficient legal analysis and application of law," "rely too heavily on a recitation of the testimony presented at the hearing," and "do not contain thorough legal analysis that support the legal conclusion." ADE Cancellation Letter (October 16, 2018). All of McCauley's decisions suffer from these same defects that ADE concluded show "you do not meet the minimum qualifications of a hearing officers under [the] IDEA." ADE Cancellation Letter (October 16, 2018).

14

46.     Almost all ADE's reasons for cancelling Doyle's contract applied to an equal or greater degree to McCauley. In other words, Doyle and McCauley were similarly situated (or Doyle compared more favorably) in all relevant respects. Even so, ADE retained McCauley but cancelled Doyle's contract.

47.     As further evidence of bias, McCauley has consistently failed and refused to comply with ADE Spec. Ed. Rule requiring school districts to "provide evidence and testimony at the due process hearing to show that the proposed course of action is necessary and appropriate," ADE Spec. Ed. Rule §10.01.9.G; rather, McCauley has placed the burden on parents to prove the school districts' proposed course of action is *not* necessary and appropriate. *See McCauley's Decisions*.

48.     As further evidence of bias, McCauley has consistently failed and refused to hear and consider parents' evidence pertaining to events occurring more than two years before the filing of the due process complaint, even where that evidence is relevant to parents' alleged IDEA violations occurring *within* the two-year limitations period. *See McCauley's Decisions*.

49.     The pattern and practice described above gives rise to an inference that McCauley is biased in favor of school districts; otherwise, he would

make required findings of fact and provide a reasoned explanation for his decisions. Instead, McCauley rules in favor of the school district without explanation and in a manner that denies parents due process of law pursuant to the Fourteenth Amendment of the Constitution. *See McCauley's Decisions*.

50.    In addition to being biased, McCauley also does not meet the minimum qualifications for a due process hearing officer because he does *not* "possess the knowledge and ability to render and write legal decision in accordance with appropriate standard legal practice." 20 U.S.C. §1415(f)(3) (A)(i)(II), (iv). *See McCauley's Decisions*.

51.    As discussed above, McCauley has consistently failed and refused to make findings of fact and conclusions of law to explain his decisions. *See McCauley's Decisions*.

52.    McCauley's decisions are all the same and follow a clear pattern. First, McCauley describes the procedural history. Next, McCauley summarizes the hearing transcript. Finally, after some boilerplate legalese that may or may not be relevant, McCauley simply decides in favor of the school district or otherwise denies parents the relief sought without any explanation of "why". *See McCauley's Decisions*.

53.    McCauley's decisions are littered with typographical errors creating ambiguity and demonstrating his inability "to render and write legal decision

in accordance with appropriate standard legal practice." 20 U.S.C. §1415(f)

(3)(A)(i)(II), (iv). *See McCauley's Decisions*.

54.    Alternatively, if McCauley's final order in this case is not vacated and

remanded to ADE, McCauley's final order should be reversed on the merits

and the case remanded for a due process hearing on Plaintiff's claim for

tuition reimbursement from CSD pursuant to 20 U.S.C. §1412(a)(1)(C).

### Count II - §1983 Due Process

55.    Plaintiff incorporates by reference the allegations contained in

Paragraphs 1-54 above.

56.    ADE is the State Education Agency ("SEA") responsible for

implementation of the IDEA in Arkansas, including the procedural

safeguards described in 20 U.S.C. §1415, and ADE is ultimately responsible

for ensuring that all children with a disability in Arkansas receive a FAPE.

*See* 20 U.S.C. §§1401(32), 1407, 1412(6)(A), 1412(a)(11)(A); 34 C.F.R. §§

300.101 and 300.600(a); Ark. Code Ann. §§6-41-202(e); and, ADE Spec.

Ed. Rules §2.71 ("The SEA in Arkansas is the Arkansas Department of

Education.").

57.    State educational agencies such as the ADE "have affirmative

responsibilities to ensure that the provisions of the IDEA requiring

placement in the least restrictive environment are implemented, including a

responsibility to '[r]eview the [school district's] justification for its actions'

17

and '[assist in planning and implementing any necessary corrective action.'"

*Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) (quoting 34 C.F.R. §

300.556). The ADE would be responsible for a violation of the IDEA if the

ADE "in some way fail[ed] to comply with its duty to assure that the IDEA's

substantive requirements are implemented." *Id.* (internal quotations

omitted).

58.     ADE may also be responsible for the direct provision of services

required by the IDEA where a school district is unable to educate a disabled

child. *Missouri Dept. of Elementary and Secondary Educ. v. Springfield*

*R-12 School Dist.*, 358 F.3d 992, 999 (8th Cir. 2004) (citing 34 C.F.R. §§

340.341, 300.370); *see also* 20 U.S.C. §§ 1407, 1412.

59.     "A due process challenge under 42 U.S.C. § 1983 to procedures local

and state agencies employ in [the IDEA] context is permitted." *Digre v.*

*Roseville Schools Independent Dist. No. 623*, 841 F.2d 245, 249 (8th Cir.

1988) (citing *Miener v. State of Missouri*, 800 F.2d 749, 755 (8th Cir. 1986)).

60.     Plaintiff was denied due process of law in violation of the Fourteenth

Amendment as a result of ADE's failure to enforce the procedural

protections outlined in 20 U.S.C. §1415 and its implementing regulations,

failure to provide Plaintiff due process at the IDEA due process hearing, and

failure to ensure the mandates of the IDEA were followed and that the CSD

provided J.P. a FAPE.

18

61.     ADE knows that McCauley does not meet the minimum qualifications
for state hearing officers because he is biased and does *not* "possess the
knowledge and ability to render and write decisions in accordance with
appropriate standard legal practice." 20 U.S.C. §1415(f)(3)(A)(i)(II), (iv).

62.     ADE has knowledge of all of McCauley's decisions, and as evidenced
by those decisions, has knowledge that McCauley does not meet the IDEAs
qualifications for hearing officers. *See* 20 U.S.C. §1415(h)(4) (hearing
officer decisions must be transmitted to advisory panel established by
§1412(a)(21)).

63.     ADE's continued employment of McCauley despite knowing he is
biased and unqualified gives rise to an inference that ADE was deliberately
indifferent to Plaintiff's right to due process of law.

64.     ADE's decision to cancel Doyle's contract when Doyle and McCauley
were similarly situated (or Doyle compared more favorably) in all relevant
respects gives rise to an inference that ADE was punishing Doyle for ruling
in favor of parents and rewarding McCauley for ruling in favor of school
districts. In this way, ADE was deliberately and intentionally tipping the
scales in favor of school districts in due process hearings.

65.     McCauley denied Plaintiff due process by failing to make findings of

fact and conclusions of law required by the IDEA and ADE Spec. Ed. Rules

as described in Count I.

66.     Without findings of fact and/or conclusions of law, Plaintiff now has

to negate every possible factual and legal basis for the hearing officer's

decision, and if she cannot do this, the court will likely defer to the hearing

officer and affirm his decision. This violates the intent of the IDEA, is

fundamentally unfair and denies Plaintiff due process pursuant to the

Fourteenth Amendment.

### Count III - Disability Discrimination

67.     Plaintiff incorporates by reference the allegations contained in

Paragraphs 1-66 above.

68.     Plaintiff incorporates by reference the allegations contained in

Plaintiff's Due Process Complaint, **Exhibit A, pp. 48-67**.

69.     The acts and omissions of the CSD and ADE described above and in

Plaintiff's Due Process Complaint also constitute disability discrimination in

violation of §504 and Title II.

70.     The CSD knew that the IEPs it offered J.P. would deny J.P. a FAPE

but it failed and refused to offer J.P. a necessary and appropriate IEP giving

rise to an inference that the CSD was deliberately indifferent to Plaintiff's right to due process of law.

71.     The CSD's acts and omissions described herein and in Plaintiff's Due Process Complaint establish that the CSD acted in bad faith or with gross misjudgment in depriving J.P. of a FAPE and substantially impeding Plaintiff's opportunity to meaningful participation. *See* 20 U.S.C. §1415(f) (3)(E)(ii)(II).

72.     The CSD's and ADE's acts and omissions departed substantially form accepted professional judgment, practice, or standards so as to demonstrate that they actually did not base the decision on such judgment.

73.     In short, the District failed and refused to address J.P.'s specific learning disability of dyslexia and conspired to obfuscate J.P.'s inability to read by misrepresenting J.P.'s academic progress. *See* **Exhibit A, pp. 48-67**.

74.     As a result of the CSD's and ADEs disability discrimination, J.P. and Plaintiff have suffered pecuniary and non-pecuniary losses for which they are entitled to recover, including but not limited to past and future medical expenses, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

## Count IV - Declaratory Relief

75.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-74 above.

76.     ADE's acts and omissions described above entitle Plaintiff to declaratory and related injunctive relief pursuant to 28 U.S.C. §§2201 and 2202

77.     Plaintiff respectfully requests that the Court declare that McCauley does not meet the IDEA's qualifications for an impartial hearing officer and enjoin ADE from assigning due process hearings to McCauley. *See* 28 U.S.C. §§2201 and 2202.

## VI.  JURY DEMAND

78.     Plaintiff demands a jury trial.

## VII.  PRAYER

WHEREFORE, Plaintiff pray that the Court: (1) vacate McCauley's final decision in H-21-04; (2) remand the H-21-04 to ADE with instructions to assign the case to another due process hearing officer for appropriate action consistent with the law and the facts; (3) alternatively, McCauley's final decision should be reversed on the merits and the case remanded for a due process hearing on Plaintiff's claim for tuition reimbursement; (4) declare that McCauley does not meet the IDEA's qualifications of an impartial hearing officer; (5) enjoin ADE

from assigning due process hearings to McCauley; (6) enter judgment awarding Plaintiff and J.P. compensatory damages for violations of their right to due process and/or for engaging in disability discrimination in an amount determined by a jury; and, (7) enter judgment awarding Plaintiff her costs and attorneys' fees incurred in the State administrative proceeding and in proceedings in this Court; and, (8) award Plaintiff and J.P. all other just and proper relief to which they may be entitled.

Respectfully submitted,

Theresa L. Caldwell (Ark. Bar No. 91163)

**CALDWELL LAW OFFICE**

14 Alban Ln.

Little Rock, AR 72223

501-414-0434

Fax: 501-325-1502

tlcatty@gmail.com

Theresa L. Caldwell

Attorney for Plaintiff, C.P.

*Individually and on behalf of J.P.*

**IN THE ARKANSAS DEPARTMENT OF EDUCATION
SPECIAL EDUCATION DIVISION**

**C.P.,**
**Parent of J.P.**                                             **PARENT**

**v.**                                 **NO. H-21-04**

**CABOT SCHOOL DISTRICT**                      **DISTRICT**

<u>**ADE DUE PROCESS HEARING RECORD (Redacted)**</u>

<u>**TABLE OF CONTENTS**</u>

Final Order ................................................................................................ 1

Parent's Motion for Judicial Notice ............................................................ 3

District's Reply in support of Motion to Dismiss ........................................ 6

Order ......................................................................................................... 13

Pre-Hearing Order ..................................................................................... 15

Parent's Supp. Response to Motion to Dismiss ......................................... 17

Parent's Response to Motion to Dismiss .................................................... 24

District's Motion to Dismiss ...................................................................... 32

District's Response to Due Process Complaint ........................................... 35

Order Setting Preliminary Timelines ......................................................... 45

Parent's Due Process Complaint ................................................................ 48

EXHIBIT A

# ARKANSAS DEPARTMENT OF EDUCATION
### SPECIAL EDUCATION SECTION

|  |  |  |
|---|---|---|
| ████████ ████ | ) | **PETITIONER** |
| **as parent of** | ) | |
| ████ ████ | ) | |
| **vs.** | ) | **CASE No. H-21-04** |
| | ) | |
| **CABOT SCHOOL DISTRICT** | ) | **RESPONDENT** |

# ORDER

**NOW** on this 3rd day of September, 2020 this cause was submitted upon the pleadings,

argument of Petitioner and Respondent, and other matters and things from all of which the

Hearing Officer Orders the above styled action is hereby Dismissed with Prejudice. The decision

of this Hearing Officer is final and shall be implemented unless a party aggrieved by it shall file

a civil action in either Federal District Court or a State Court of competent jurisdiction pursuant

to the Individuals with Disabilities Education Act within ninety (90) days after the date on which

the Hearing Officer's Decision is filed with the Arkansas Department of Education. Pursuant to

Section 10.01.36.5, *Special Education and Related Services: Procedural Requirements and*

*Program Standards*, Arkansas Department of Education 2008, the Hearing Officer has no further

jurisdiction over the parties to the hearing.

**IT IS SO ORDERED.**

*Michael McCauley*
Due Process Hearing Officer
September 3rd, 2020

U.S. Mail Copies to:

Ms Theresa Caldwell, Esq
Caldwell Law Office
14 Alban Lane



ADE No. H-21-04 Record, p. 1

Little Rock, Arkansas 72223

Mr. Jay Bequette, Esq
Bequette, Billingsly & Kees, P.A.
425 West Capital; Suite 3200
Little Rock, Arkansas 72201-3469

Mr. Rick Porter
Arkansas Department of Special Education
1401 West Capital; Suite 450
Little Rock, Arkansas 72201

## IN THE ARKANSAS DEPARTMENT OF EDUCATION
## SPECIAL EDUCATION DIVISION



**Parent of**

**Parent**

**v.**

**CABOT SCHOOL DISTRICT,**

**District**

§
§
§
§
§
§
§
§
§
§
§

**CASE NO.  H-21-04**

---

## PARENT'S MOTION FOR JUDICIAL NOTICE

---

Parent [redacted] on behalf of her minor daughter, **JILLIAN** [redacted] and pursuant to the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, *et* seq., and Arkansas Department of Education Special Education and Related Services Rules ("ADE ("ADE Sped. Ed. Rules"), files her Motion for Judicial Notice and alleges as follows:

1.     A factual dispute exists as to whether the Hannah School is an Arkansas School District. *See* District's Motion to Dismiss Reply, p. 1

("[T]he right to challenge prior educational services is forfeited when a student *changes school districts* . . .").

2.     Parent respectfully requests that judicial notice be taken of the fact that the Hannah School is *not* an Arkansas school district. This is a matter of public record and readily accessible on ADE's website. ADE's homepage has a red bar near the top with a "Contacts" menu on the far right.  Open the Contacts menu and click on "Districts," and a list of all Arkansas school districts will open with relevant contact information. The Hannah School does not appear on this list. The list may also be accessed with the following link: https://adedata.arkansas.gov/spd/Home/districts

3.     Judges may take judicial public records available on the ADE website. *See Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cty.* v. *Beebe*, 578 F.3d 753, 762 n.12 (8th Cir. 2009) (taking judicial notice of ADE enrollment data).

WHEREFORE, Parent prays that judicial notice be taken of the fact that the Hannah School is *not* an Arkansas School District.

Respectfully submitted,

**Caldwell Law Office**
14 Alban Lane
Little Rock, Arkansas 72223
Phone (501) 414-0434
Fax: (501) 325-1502

/s/ Theresa L. Caldwell

Theresa L. Caldwell (Bar #91163)
Email: theresa@specedattorney.com

*Attorney for Parent* ████   ████

## CERTIFICATE OF SERVICE

This will certify that a copy of the above and foregoing instrument was served upon the ADE and District via email to their representative listed below on this 3rd day of September, 2020.

Mr. Rick Porter
Arkansas Department of Education
Office of Special Education Dispute Resolution Director
Email: brenda.watson@arkansas.gov

Mr. Jay Bequette
Bequette, Billingsly & Kees, P.A.
Email: jbequette@bbpalaw.com

Mr. Michael McCauley
ADE Hearing Officer
Email: mccauley13@hotmail.com

/s/ Theresa L. Caldwell
Theresa L. Caldwell

IN THE ARKANSAS DEPARTMENT OF EDUCATION
SPECIAL EDUCATION DIVISION

|  |  |  |
|---|---|---|
| **Parent of** ███████ | ) | |
| | ) | |
| **Parent,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. H-21-04** |
| | ) | |
| **CABOT SCHOOL DISTRICT,** | ) | |
| | ) | |
| **District.** | ) | |

### DISTRICT'S REPLY TO PARENT'S RESPONSE TO DISTRICT'S MOTION TO DISMISS

Cabot School District ("District"), by its attorneys, Bequette, Billingsley & Kees, P.A., for its Reply to Parent's Response to District's Motion to Dismiss, states:

Parent filed a Due Process complaint against the District, as outlined below. The District's theory for dismissal is simple—the Eighth Circuit Court of Appeals has held that the right to challenge prior educational services is forfeited when a student changes school districts prior to requesting a due process hearing; as has taken place here. Parent cannot change that critical fact and her Response to Motion to Dismiss ("Response") misapplies case law and relies on cases from other circuits. When the controlling, relevant case law is applied, the District's Motion to Dismiss must be granted.

### I. RELEVANT FACTUAL BACKGROUND

Parent of ███████ ("Student") filed a Due Process Complaint ("Complaint") against the District on August 13, 2020. The Complaint alleged the District failed to make a FAPE available to Student within a reasonable period of time and now Parent demands the District should be responsible for paying for Student's placement at The Hannah School, a private placement.

Parent states that "▓▓▓▓ has been placed in private school where she can receive appropriate dyslexia intervention." *See* Compl. ¶ 49. In the Parent's Response, she admits again she placed Student in The Hannah School, and does not deny Student was placed there before filing a due process complaint. *See* Response at ¶ 3. This confirms that the Student was not placed at The Hannah School by the District, but was removed from the District by her Parent, all prior to filing the Due Process Complaint.

The District now moves to dismiss the Due Process Complaint because Student left the District before filing a due process complaint and the District was not given an opportunity to address the alleged problem. The Eighth Circuit Court of Appeals has established that the right to challenge educational services is forfeited when a student changes school districts prior to requesting a due process hearing.

## II.   ARGUMENT AND AUTHORITY

### A. DISTRICT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE THE EIGHTH CIRCUIT HAS CLEARLY ESTABLISHED STUDENTS LOSE THE RIGHT TO CHALLENGE PRIOR EDUCATIONAL SERVICES WHEN THEY CHANGE DISTRICTS BEFORE REQUESTING A DUE PROCESS HEARING.

The Eighth Circuit is clear that "if a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved. Subsequent challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing. *Thompson by & Through Buckhanon v. Board of the Special Sch. Dist. No. 1*, 144 F.3d 574, 579 (8th Cir. Minn. May 19, 1998). The Court states in its analysis that "[t]he purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem. Once the school district receives notice. it has the opportunity to address the alleged problem." *Id*.

2

at 579. The Court continues, "Under [Parent's] theory, a school would be potentially liable for unanticipated costs for alleged problems of which it is totally unaware." *Id.*

### 1. The District Was Neither Put on Notice nor Given an Opportunity to Address the Problem.

The District received the Due Process Complaint August 13, 2020. At that time the Student had already been placed at the Hannah School. These facts alone establish that the District was never given an opportunity to respond to Parents' Due Process Complaint.

Parent cites *Indep. Sch. Dist. No. 284 v. A.C., by & though her Parent, C.C.*, to no avail, entering a discussion on the mootness of when the Parent in *A.C.* could have afforded to put her child in private school. 258 F.3d 769 (8th Cir. 2001). *A.C.* is distinguished from *Thompson* because A.C. filed a due process complaint against the school district and then moved to another school district after the due process hearing had already taken place. The issue in this matter cannot be distinguished from *Thompson* because the Student was removed from the District before the Due Process Complaint was filed. Parent cannot survive dismissal based on the holding of *Thompson*, which completely supports the District's position.

In the Supplemental Response, Parent states, "most federal courts have rejected *Thompson* and its progeny." *See* Parent's Supplemental Response to Motion to Dismiss at ¶ 7. Parent makes this blanket statement without providing any support outside of one District Court case in the D.C. Circuit. Further, Parent mischaracterizes *L.R.L.*'s respect for the Eighth Circuit's established precedence.

First, *Thompson* is the prevailing law for this current proceeding. In 2020, the Eighth Circuit restated and reaffirmed the law in *Thompson*—that the right to challenge prior educational services is forfeited when a student changes school districts prior to requesting a due process hearing. *D.L. v. St. Louis City Sch. Dist.*, 950 F.3d 1057 (8th Cir. 2020). *D.L.* again noted the

3

intent of this rule is to give the District an opportunity to resolve the problem. *Id.* at 1063. Here, the District never had that opportunity before Parent enrolled Student at The Hannah School.

Second, in *L.R.L. v. District of Columbia,* the Court recognized the established precedent in the Eighth Circuit, stating that it has been "recently confirmed" that a student must request a due process hearing if the student wishes to preserve the right to challenge educational services provided by that district; stating further, "District Courts within the Eighth Circuit have followed this precedence accordingly." 896 F. Supp. 2d 69, 74 (D.D.C. 2012). The case that Parent largely relies on in her Response indeed recognized that the Eighth Circuit clearly requires a student to be enrolled in the district at issue to preserve a due process proceeding.

### 2. The Issue of Prospective Relief vs. Compensatory Relief is a Straw Man.

There is absolutely no discussion in *Thompson* about the question of prospective relief and compensatory relief. *See Thompson by & Through Buckhanon v. Bd. of the Special Sch. Dist. No. 1*, 144 F.3d 574, 579 (8th Cir. 1998); *see also C.N. v. Willmar Pub. Sch.,* 591 F.3d 624, 631-32 (8th Cir. 2010). Again, "the purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem . . . . Under [current] theory, a school would be potentially liable for unanticipated costs for alleged problems of which it is totally unaware." *Thompson*, 144 F.3d at 579. The *Thompson* Court continues and states that recovering tuition is a remedy only if there has been a determination that the free and appropriate public education guarantee has been violated, exhaustive administrative remedies have been tried before placement, and the school has been notified." *Id.* This statement from *Thompson* is not a retrospective suggestion on how to recover after a student has changed districts, it is a death sentence to due process claims made after Students have forfeited their right. The *Thompson* and *C.N.* Courts do not discuss the requested relief and the parties seeking it cannot

4

get past the first bar; they must have notified the school by requesting a due process hearing prior to transferring to a different school. *Thompson* and *C.N.* create a hardline rule that is not concerned with the relief requested.

Parent cites to two cases that she argues "foreclose" the District's argument. First, *Forest Grove Sch. Dist. v. T.A.*, states "The IDEA authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE and the private school is appropriate." 557 U.S. 230, 230, 129 S. Ct. 2484, 2486 (2009). *Forest Grove* does not address the issue in *Thompson*. In *Forest Grove*, the Student had a due process hearing, and the question before the court was whether the higher courts could order the district to pay for private school— after FAPE and placement had already been decided. The Court in *Forest Grove* simply does not address *Thompson* or the matters currently at issue.

Parent also cites to *CJN v. Minneapolis Pub. Sch.*, where the issue before the court was whether the District provided the student a FAPE and parents were requesting reimbursement for private school. 323 F.3d 630, 634 (8th Cir. 2003). In our current case, Parent loosely insinuates that because the court in *CJN* addressed the issue of reimbursement of a private school, that somehow this body can conclude that *Thompson* has been foreclosed. However, *CJN* has the same problem as *Forest Grove*; the Student in *CJN* had a due process hearing that found in his favor. Again, the Parent's issue before our current court cannot survive because they requested no such hearing before enrolling in private placement. Unlike the cases cited, Parent has no due process hearing to rely on and Parent's right to challenge has been lost. *Id.*

Parent leans heavily on the issue of relief. The type of relief sought is not considered in *Thompson* and *CJN*, the controlling law in this case. *See Thompson by & Through Buckhanon v. Bd. of the Special Sch. Dist. No. 1*, 144 F.3d 574, 579 (8th Cir. 1998); *see also C.N. v. Willmar*

5

*Pub. Sch.,* 591 F.3d 624, 631-32 (8th Cir. 2010).   In the cases cited by the Parent, those students

<u>already</u> received a Due Process Hearing and those courts weren't deciding the issue raised and

considered in *Thompson* and *C.N.   See Forest Grove Sch. Dist. v. T. A.,* 557 U.S. 230, 230,

129 S. Ct. 2484, 2486 (2009); *see also CJN v. Minneapolis Pub. Sch.,* 323 F.3d 630, 634 (8th Cir.

2003).

> **3.   Subsequent Challenges to the Previous Education Are Still Moot and the New School District Is Responsible for Providing a Due Process Hearing.**

Parent suggests that *Thompson's* rationale does not apply in Arkansas because the "ADE

is responsible for conducting due process hearings." *See* Parent's Supplemental Response at ¶ 8.

This issue has been addressed and decided by the Eighth Circuit in *C.N. v. Willmar Pub. Sch.,*

where the court specifically held it did not matter whether the state conducted the hearing, as the

educational entity was still responsible for providing educational services when the due process

complaint was filed.  591 F.3d at 631.  In the same breath, *C.N.* concludes:

> [Student], however, did not request a due process hearing while the District was responsible for her education. Rather, by the time [Student] requested a hearing against the District, [New District] had already assumed responsibility for providing [Student] with an appropriate education geared toward addressing her specific needs (including any arising from deficiencies in C.N.'s prior education). Under these circumstances, we agree with the district court that [Student]'s IDEA claim fails but she may request a hearing against [New District] if she believes her educational needs are not currently being met.

*Id.*

## CONCLUSION

The Eighth Circuit is clear that if a student changes school districts and does not request a

due process hearing prior to leaving, his or her right to challenge prior educational services is not

preserved.  Parent of Student in this case changed districts before requesting a due process hearing.

The rule is clear and hardline.  Parent's right was not preserved.

6

WHEREFORE, Cabot School District prays that its Motion to Dismiss be granted and that

Plaintiffs' Complaint be dismissed; for the District's attorneys' fees and costs incurred herein; and

for all other relief to which the District may be entitled.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax:    (501) 374-5092
Email: jbequette@bbpalaw.com

By: *Jay Bequette*
    Jay Bequette, Ark. Bar No. 87012

*Attorneys for Cabot School District*

## CERTIFICATE OF SERVICE

I, Jay Bequette, do hereby certify that a true and correct copy of the foregoing was sent via email to the following on this 1st day of September, 2020:

Theresa L. Caldwell
Caldwell Law Office
14 Alban Lane
Little Rock, AR 72223
Email: tlcatty@gmail.com

Mr. Michael McCauley
Impartial Due Process Hearing Officer
423 South 70th East Avenue
Tulsa, OK 74112
Email: mccauley13@hotmail.com

Rick Porter, Program Coordinator,
Dispute Resolution
Arkansas Department of Education
Division of Secondary and Elementary
Education
1401 West Capitol Avenue, Suite 450
Little Rock, AR 72201
Fax: (501) 683-4496
Email: rick.porter@arkansas.gov

*Jay Bequette*

7

ADE No. H-21-04 Record, p. 12

# ARKANSAS DEPARTMENT OF EDUCATION
### SPECIAL EDUCATION SECTION

|  |  |  |
|---|---|---|
| ███████ ████████ | ) | **PETITIONER** |
| **as parent of** | ) | |
| ███████ ███████ | ) | |
| **vs.** | ) | **CASE No. H-21-04** |
| | ) | |
| **CABOT SCHOOL DISTRICT** | ) | **RESPONDENT** |

===========================================================

# ORDER

I have been appointed to hear the above-captioned matter. The dates and times for the conduct of a pre-hearing conference and due process hearing will be set under separate correspondence.

Pursuant to 34 C.F.R. § 300.515(a), a decision in a due process hearing must be reached and mailed to each of the parties not later than 45 days after the expiration of the 30-day resolution period under 34 C.F.R. § 300.5 10(b), or the adjusted time periods described in 34 C.F.R. § 300.510(c). Under 34 C.F.R. § 300.510(c), the 45-day time-line for the due process hearing starts the day after one of the following events: (1) both parties agree in writing to waive the resolution meeting; (2) after either the mediation or resolution meeting starts but before the end of the 30-day period, the parties agree in writing that no agreement is possible; or (3) if both parties agree in writing to continue the mediation at the end of the 30-day resolution period, but later, the parent or public agency withdraws from the mediation process.

Pursuant to 34 C.F.R. § 300.515(c), the undersigned may grant specific extensions of time beyond the periods set out in 34 C.F.R. § 300.515(a) at the request of either party.

**IT IS HEREBY ORDERED** that -

The parties shall schedule a resolution meeting pursuant to 34 C.F.R. § 300.510(a), the parties

shall notify the undersigned of the date and time of the scheduled resolution meeting within **THREE** business days of it being scheduled.

Should the parties participate in a resolution meeting pursuant 34 C.F.R. § 300.510(a), and the parties reach an agreement consistent with 34 C.F.R. § 300.5 10(d), the parties shall notify the undersigned within three business days of the agreement's execution that the matter has been resolved and that it can be dismissed (with or without prejudice).

Should any of the events under 34 C.F.R. § 300.5 10(c) occur, the parties shall notify the undersigned of the occurrence within one business day. The 45-day time-line for the due process hearing will start the day after the occurrence of the event.

**IT IS SO ORDERED.**

*Michael McCauley*
Due Process Hearing Officer
August 28th, 2020

U.S. Mail Copies to:

Ms. Theresa Caldwell, Esq
Caldwell Law Office
14 Alban Lane
Little Rock, Arkansas 72223

Mr. Jay Bequette, Esq
Bequette, Billingsly & Kees, P.A.
425 West Capital; Suite 3200
Little Rock, Arkansas 72201-3469

Mr. Rick Porter
Arkansas Department of Special Education
1401 West Capital; Suite 450
Little Rock, Arkansas 72201

## ARKANSAS DEPARTMENT OF EDUCATION
### SPECIAL EDUCATION SECTION

| | | |
|---|---|---|
| ███ ████████ | ) | **PETITIONER** |
| **as parent of** | ) | |
| ████ █████████ | ) | |
| **vs.** | ) | **CASE No. H-21-04** |
| | ) | |
| **CABOT SCHOOL DISTRICT** | ) | **RESPONDENT** |

# PRE-HEARING ORDER

ON THIS August 28, 2020, the Hearing Officer having found it necessary and desirable to have the parties in this matter submit Pre-Hearing Briefs, schedule a Pre Hearing Conference and establish Due Process Hearing dates, however, the parties are free to enter into settlement discussions and agreement at any time and nothing in this Order should be interpreted as prohibiting any settlement discussions. The parties are required to have convened a resolution meeting no later than August 28th, 2020 and have until September 12th, 2020 to resolve the issue to the parents satisfaction.

All communication with the Hearing Officer shall be in writing by email or FAX'd to 1 539- 777-25 17 with copies to all parties.

Pre-hearing briefs are due no later than 10 30 a.m. on the 14th day of September, 2020, and shall be FAXED to 1( 539) 777-2517 The pre-hearing brief shall address only a detailed and specific review of ONLY the issues to be addressed and the arguments to be presented in the hearing. The issues are limited to ONLY IDEA ISSUES raised in the Request for Hearing.

The Pre-Hearing Conference shall be held by ZOOM Conference (unless the location is

changed with proper notice) on September 15th, 2020.

     The Due Process Hearing shall be held September   16th, 17th and 18th, 2020  at the abot School District Administration Office. If  there are conflicts with any Hearing dates please schedule a conference call to discuss alternatives.

     A final decision must be reached in this matter not later than 45 days after the expiration of the resolution period unless extended by a continuance. The 45 day time-line will start to run on September 12th,  2020 . Accordingly, a decision in this matter must be reached and mailed to each of the parties on or before October 27th, 2020.

*Michael McCauley*

                            Due Process Hearing Officer
                            August 28th, 2020

U.S. Mail Copies to:

Ms. Theresa Caldwell, Esq
Caldwell Law Office
14 Alban Lane
Little Rock, Arkansas 72223

Mr. Jay Bequette, Esq
Bequette, Billingsly & Kees, P.A.
425 West Capital; Suite 3200
Little Rock, Arkansas 72201-3469

Mr. Rick Porter
Arkansas Department of Special Education
1401 West Capital, Suite 450
Little Rock, Arkansas 72201

IN THE ARKANSAS DEPARTMENT OF EDUCATION
SPECIAL EDUCATION DIVISION



|  |  |
|---|---|
| **Parent of** | § |
| | § |
| | § |
| **Parent** | § |
| | § |
| **v.** | § |
| | § |
| **CABOT SCHOOL** | § |
| **DISTRICT,** | § |
| | § |
| **District** | § |

CASE NO.  H-21-04

---

## PARENT'S SUPPLEMENTAL
## RESPONSE TO MOTION TO DISMISS

---

Parent ▇▇▇▇ ▇▇▇▇▇ on behalf of her minor daughter, JILLIAN ▇▇▇▇ and pursuant to the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, *et* seq., and Arkansas Department of Education Special Education and Related Services Rules ("ADE Sped. Ed. Rules"), files this Supplemental Response to Motion to Dismiss and alleges as follows:

1.      On 08/24/2020, Parent filed her Response to Motion to Dismiss.

2.      On 08/25/2020, the Hearing Officer emailed Parent asking, "What

date did the student enroll and begin receiving services at the Hannah

School"?

3.      Parent objects to providing this information because it is irrelevant.

Enrolling and/or receiving services from a private school does *not* change

the school district responsible for providing ▆▆ a free appropriate public

education ("FAPE"). Parent and ▆▆ still reside in the Cabot School

District ("Cabot"), and as a result, Cabot remains responsible for providing

▆▆ a FAPE. *See* Ark. Code Ann. §6-41-202(a)(2) (responsibility for a

FAPE assigned to "appropriate school district"); §6-18-202 (school district

based on residency). Parents seek relief in the form of private school tuition

because the Cabot has failed to provide FAPE in a timely manner. *See* 20

U.S.C. §1412(a)(10)(C)(ii).

4.      Parent has the right to unilaterally remove ▆▆ from Cabot, enroll

her in a private school, and seek reimbursement for private school tuition.

*See* 20 U.S.C. §1412(a)(10)(C)(ii); *Sch. Comm. of Town of Burlington,*

*Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74 (1985) ("[W]e think

it operates in such a way that parents who unilaterally change their child's

placement during the pendency of review proceedings, without the consent

of state or local school officials, do so at their own financial risk."). *C.B. ex*

*rel. B.B. v. Special Sch. Dist. No. 1, Minneapolis, Minn.*, 636 F.3d 981, 991

(8th Cir. 2011) ("At that point, C.B.'s parents had a right of unilateral withdrawal and a right to reimbursement for private tuition, so long as the placement was proper under the Act and the award furthers the purposes of the Act.") (internal quotations and citations omitted).

5.     The *precise* date that ▊▊▊ enrolled or began receiving services at the private school has no bearing on Parent's right to reimbursement. *See* 20 U.S.C. §1412(a)(10)(C)(ii). "In order to get reimbursement for a private placement, two requirements must be established: that the school failed to provide a FAPE; and that the private school is an 'appropriate' placement within the meaning of the IDEA." *Sneitzer v. Iowa Dep't of Educ.*, 796 F.3d 942, 948 (8th Cir. 2015)

6.     The Eighth Circuit made this clear in distinguishing *Thompson v. Bd. of the Special School Dist. No. 1*, 144 F.3d 574 (8th Cir.1998) in *Indep. Sch. Dist. No. 284 v. A.C., by & through her Parent, C.C.*, 258 F.3d 769 (8th Cir. 2001). In that case, A.C. filed a due process complaint against a school district but then moved to another school district. The old district argued A.C.'s claim was moot because he no longer resided in the district citing *Thompson*. The Eighth Circuit held A.C.'s claim was *not* moot because A.C. sought compensatory relief for past violations, rather than prospective relief for ongoing violations. The Court explained:

In *Thompson v. Bd. of the Special School Dist. No. 1*, 144 F.3d 574, 579 (8th Cir.1998), we held that a student's IDEA claim was moot because his old district was not responsible for providing him a due-process hearing, which he requested only after he had left the district to attend another school. Here, however, A.C.'s due-process hearing is over. A.C.'s claim in this case concerns obligations the District allegedly had in the past and failed to meet. The remedy sought is compensatory. It does not matter whether the District has any present or future obligation to develop a new IEP for her or to give her further hearings. ***If A.C. or her mother had paid the costs of a private placement at the time, and then sued the District for reimbursement, the claim would not be moot.*** See *Zobrest v. Catalina Foothills School Dist.,* 509 U.S. 1, 4 n. 3, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993). We think that the same result should obtain here. In either case, the claim is that the statute obligated the school district to pay for the placement during the time ***when it was responsible for the student's education.*** Assuming that A.C.'s claim has merit, it would not make sense to deny her a remedy against the District just because her parent did not or could not pay for the placement that the District denied her.

*Indep. Sch. Dist. No. 284*, 258 F.3d at 774–75 (emphasis supplied). Hence, in the process of distinguishing *Thompson*, the Eighth Circuit recognized that a parent may "pa[y] the costs of a private placement, and then sue[] the District for reimbursement." *Id.* Accordingly, "the same result should obtain here" because the Cabot remains "responsible for the student's education." *Id.*

7.     The Eighth Circuit's holding in *Thompson* should be narrowly construed because of the burden it places on parents' rights under the IDEA. As a result of the burden on parents, most federal courts have rejected *Thompson* and its progeny. For example, in *L.R.L. ex rel. Lomax v. D.C.*, 896 F. Supp. 2d 69 (D. D.C. 2012), the court rejected *Thompson* explaining:

If an LEA's IDEA obligations were extinguished upon a student leaving the LEA, parents would be placed in the untenable situation of choosing between the lesser of two evils: either leaving their child in an unsatisfactory situation while waiting for a lengthy administrative appeals process to play out in order to preserve their right to compensatory education as a remedy, or remedying the situation immediately by moving the child to a new LEA while forfeiting any right they had to an administrative review and any subsequent compensatory education. The Court is not prepared to place that burden on parents. Similar to the defendant student and parents in *Neshaminy*, L.R.L. and his mother "have a concrete interest in seeking to redress an injury which they suffered in the past." *Neshaminy*, 1997 WL 137197, at *6, 1997 U.S. Dist. LEXIS 3849, at *17. L.R.L. and his mother "merely seek to ... redress their alleged injury which arose when [the school district] allegedly violated [the child]'s right to a FAPE at a time when [the school district] was required under the law to provide [the child] with a FAPE." *Id.*

*Id.* 82-83. Likewise in the present case, Parent "merely seek to ... redress their alleged injury which arose when [Cabot] allegedly violated [          ]s right to a FAPE at a time when [Cabot] was required under the law to provide [          ] with a FAPE." *Id.* at 83.

8.    Moreover, a key rationale underlying *Thompson* – "[s]ubsequent challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing" – does *not* apply in Arkansas. *See Thompson*, 144 F.3d at 578. In Arkansas, ADE is responsible for conducting the due process hearing, not the new school district. *See* ADE Spec. Ed. Rules §§ 10.01.9.1, 10.1, 30.1, 30.2. Cabot is a proper "party" to the due process hearing as the "public agency responsible for the provision of a [FAPE] . . . ." *See* ADE Spec. Ed. Rules §10.01.2.7.

Parent's due process complaint raises issues "relating to the . . . educational

placement of a child with a disability" and "the provision of a [FAPE]," and

thus, it falls squarely within the Hearing Officer's jurisdiction. *See* ADE

Spec. Ed. Rules §10.01.3.1. Finally, the Hearing Officer has authority to

grant Parent the relief sought – private school tuition. *See D.L.*, 950 F.3d at

1065-66. Therefore, this Hearing Officer has jurisdiction over the parties and

the issues raised in Parent's Due Process Complaint.

WHEREFORE, Parent prays that the Cabot's Motion to Dismiss be denied;

and, that Parent be awarded all other just and proper relief to which she may be

entitled.

Respectfully submitted,

**Caldwell Law Office**
14 Alban Lane
Little Rock, Arkansas 72223
Phone (501) 414-0434
Fax: (501) 325-1502

/s/ Theresa L. Caldwell
Theresa L. Caldwell (Bar #91163)
Email: theresa@specedattorney.com

*Attorney for Parent* 

## CERTIFICATE OF SERVICE

This will certify that a copy of the above and foregoing instrument was
served upon the ADE and District via email to their representative listed
below on this 26th day of August, 2020.

Mr. Rick Porter
Arkansas Department of Education
Office of Special Education Dispute Resolution Director
Email: brenda.watson@arkansas.gov

Mr. Jay Bequette
Bequette, Billingsly & Kees, P.A.
Email: jbequette@bbpalaw.com

Mr. Michael McCauley
ADE Hearing Officer
Email: mccauley13@hotmail.com

/s/ Theresa L. Caldwell
Theresa L. Caldwell

# IN THE ARKANSAS DEPARTMENT OF EDUCATION
## SPECIAL EDUCATION DIVISION



Parent of

**Parent**

**v.**

**CABOT SCHOOL
DISTRICT,**

**District**

§
§
§
§
§
§
§
§
§
§
§
§

**CASE NO.  H-21-04**

---

## PARENT'S RESPONSE TO MOTION TO DISMISS

---

Parent ▅▅▅ ▅▅▅ on behalf of her minor daughter,

JILLIAN ▅▅▅ and pursuant to the Individual with Disabilities

Education Act ("IDEA"), 20 U.S.C. §1400, *et* seq., and Arkansas

Department of Education Special Education and Related Services Rules ("ADE

Sped. Ed. Rules"), files her Response to Motion to Dismiss and alleges as follows:

1.      ▅▅▅ ▅▅▅ ("Parent") denies that her Due Process

Complaint fails to meet the sufficiency requirements of 20 U.S.C. §1415(b)

(7)(A)(ii). Parent affirmatively asserts that her Due Process Complaint

includes each element required by §1415(b)(7)(A)(ii). That section does *not*

require that Student be enrolled in the Cabot School District ("District"). The District remains responsible for providing ███ a free appropriate public education ("FAPE"), but it has failed to do so in a timely manner. *See* 20 U.S.C. §1412(a)(10)(C)(ii).

2.      Parent admits as stated in her Complaint, that ███ is enrolled in the Hannah School because it is an appropriate placement and the District failed to make a FAPE available to ███ in a timely manner. Accordingly, Parent seeks reimbursement from the District for the cost of The Hannah School. *See* 20 U.S.C. §1412(a)(10)(C)(ii).

3.      Parent admits that ███ was not placed at the Hannah School by the District; but rather, Parent enrolled ███ in the Hannah School because it is an appropriate placement and after years of the District ignoring Jillian's SLD and dyslexia and its failure to make a FAPE available to ███ in a timely manner. Accordingly, Parent seeks reimbursement from the District for the cost of the Hannan School. *See* 20 U.S.C. §1412(a)(10)(C)(ii).

4.      Parent denies the allegations in paragraph 4 of the District's Motion. Parent affirmatively assets that this Hearing Officer has express statutory authority to grant Parent the relief sought. Section 1412(a)(10)(C)(ii) provides:

If the parents of a child with a disability, who previously received special education and related services under the authority of a public

2

agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, *a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment* if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

*Id*. (emphasis supplied).

5.     To support its argument, the District cites three cases. First, the

District cites *D.L. v. St. Louis City Sch. Dist.*, 950 F.3d 1057 (8th Cir. 2020).

In that case, the issue raised by the District was *not* decided because the due

process complaint was filed *before* the child enrolled in a private school.

However, the Eighth Circuit *did decide* the question of mootness raised by

the school district in that case. It rejected the school district's mootness

argument explaining:

The District next contends D.L.'s claims for prospective relief are moot because he now resides outside the District. The District misapprehends the claims before us. D.L. is making no claim for prospective relief, rather he seeks only compensation for past obligations incurred while he resided in the District. Such claims may be sought after a student leaves a school district. *Independent Sch. Dist. No. 284 v. A.C.*, 258 F.3d 769, 774-75 (8th Cir. 2001). The District's mootness challenge also fails.

*Id.* at 1063. Similarly, reimbursement for private school tuition "seeks

compensation for past obligations incurred" and "[s]uch claims may be sought

after a student leaves a school district." *Id*. Therefore, *D.L.* supports Parent's right

to seek reimbursement for private school tuition *after* enrolling in a private school

3

– as expressly permitted by 20 U.S.C. §1412(a)(10)(C)(ii).

6.    The District next cites *C.N. v. Willmar Public Schools, Independent Sch. Dist. No. 347*, 591 F.3d 624 (8th Cir. 2010) and *Thompson v. Board of Special School District No. 1*, 144 F.3d 574 (8th Cir.1998). In these cases, the due process complaint sought only *prospective relief* and was filed *after* the child enrolled in a *new* school district. Under these circumstances, the parents' due process complaint against the *old* school district became moot because the *old* school district was no longer responsible for the child's education. As the Eighth Circuit explained in *C.N.*:

> As the *Thompson* court recognized, the hearing process is in place to ensure that a "disabled child's educational needs are being met by the student's school district." 144 F.3d at 578. After all, "'[t]he purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem. Once the school district receives notice, it has the opportunity to address the alleged problem.'" *M.M.*, 512 F.3d at 460 (quoting *Thompson*, 144 F.3d at 579). . . . C.N., however, did not request a due process hearing while the District was responsible for her education. Rather, by the time C.N. requested a hearing against the District, Atwater had already assumed responsibility for providing C.N. with an appropriate education . . . Under these circumstances, we agree with the district court that C.N.'s IDEA claim fails but she may request a hearing against Atwater if she believes her educational needs are not currently being met.

*Id.* at 631. Therefore, these cases establish a due process complaint seeking *prospective relief* must be filed against the school district responsible for providing the child a FAPE.

4

7.    As stated by OSEP in their 2010 Memo (Letter to Goetz):

Nothing in the IDEA limits a parent's right to file a due process complaint against an LEA that the child previously attended, provided the violation occurred within two years of the time the parent filed the due process complaint even though, in most cases, a parent will request a due process hearing to raise issues involving the LEA where the child is currently attending. In fact, the IDEA contemplates that some parents may remove their child from one LEA and place the child in another LEA or in a private school if they believe the child's current LEA is not providing FAPE to their child. See 34 CFR §300.148, "Children with Disabilities Enrolled by Their Parents in Private Schools When FAPE Is at Issue" and under which provisions a parent may seek reimbursement from the previous LEA, subject to conditions delineated at 34 CFR§300.148(c) and (d).

OSEP believes that the Minnesota statute -- as interpreted by the Eighth Circuit Court of Appeals to deny parents the right to file a due process complaint against an LEA that their child previously attended, provided that the violation occurred within two years of the date when the parents file the complaint -- limits the parents' rights under the IDEA and is inconsistent with the provisions of 34 CFR §§300.507-300.518. OSEP also believes that the section of the State Department of Education's Notice of Procedural Safeguards quoted above is not consistent with the IDEA. However, decisions by the Eighth Circuit Court of Appeals are controlling on this point in the State of Minnesota. Accordingly, since this section of the State's Notice of Procedural Safeguards appears to be consistent with the Eighth Circuit precedent, this office cannot require the State Department of Education to amend its Notice of Procedural Safeguards or otherwise require the State to amend its statute.

OSEP, Letter to Goetz, Oct 4, 2010. **Ex A**.

8.    In this case, the District remains responsible for providing ███ a

FAPE, and as a result of the District's failure to provide ███ a FAPE in a

timely manner, Parent has the right to enroll ███ in a private school and "a

5

court or a hearing officer may require the agency to reimburse the parents

for the cost of that enrollment if the court or hearing officer finds that the

agency had not made a free appropriate public education available to the

child in a timely manner prior to that enrollment." 20 U.S.C. §1412(a)(10)

(C)(ii).

9.     The District's argument is foreclosed by the Supreme Court's decision

interpreting 20 U.S.C. §1412(a)(10)(C)(ii) in *Forest Grove Sch. Dist. v. T.A.*,

557 U.S. 230, 234 (2009). That case involved facts identical to the present

case – the parents filed their due process complaint *after* enrolling the child

in a private school. As the Supreme Court noted, "Four days after enrolling

him in private school, respondent's parents hired a lawyer to ascertain their

rights and to give the School District written notice of respondent's private

placement." *Id*. at 234. The Supreme Court ultimately concluded, "[The]

IDEA authorizes reimbursement for the cost of private special-education

services when a school district fails to provide a FAPE and the private-

school placement is appropriate, regardless of whether the child previously

received special education or related services through the public school." *Id*.

at 247.

10.     Likewise, the District's argument is foreclosed by Eighth Circuit

precedent. In *CJN v. Minneapolis Pub. Sch.*, 323 F.3d 630 (8th Cir. 2003),

the Eighth Circuit addressed a due process complaint filed *after* the child

6

was enrolled in private school. The Eighth Circuit noted:

> [Parent] unilaterally decided to enroll CJN in Calvin Academy, a private school that serves disabled and "at-risk" students. CJN's mother then filed a complaint with the Minnesota Department of Children, Families and Learning, seeking, among other things, a declaration that the District had not provided CJN with a FAPE and asking for reimbursement for his private school tuition.

*Id.* at 635. The Eighth Circuit ultimately affirmed the district court decision

deciding the school district had provided a FAPE and denied the parents' request

for reimbursement. *Id.* at 641.[1]

11.    Therefore, the District's Motion to Dismiss should be denied. The District

remains responsible for providing ███ a FAPE. Because it failed to do so in

a timely manner, Parent enrolled ███ in a private school and seeks tuition

reimbursement pursuant to 20 U.S.C. §1412(a)(10)(C)(ii).

12.    That section gives this hearing officer express authority to award Parent

tuition reimbursement, and that authority does *not* depend on *when* Parent

filed her Due Process Complaint *See Forest Grove Sch. Dist*, 557 U.S. at 234;

*CJN*, 323 F.3d at 635. For these reasons, the District Motion to Dismiss

should be denied.

WHEREFORE, Parent prays that the District's Motion to Dismiss be denied;

and, that Parent be awarded all other just and proper relief to which she may be

---

[1] *But see* Justice Bye's dissent claiming "HO's findings and conclusions were disregarded by the hearing review officer (HRO), the district court, and this court." *CJN ex rel. SKN v. Minneapolis Public Schools,* 323 F.3d 630, 648 (8th Cir. 2003).

entitled.

**Caldwell Law Office**
14 Alban Lane
Little Rock, Arkansas 72223
Phone (501) 414-0434
Fax: (501) 325-1502

/s/ Theresa L. Caldwell
Theresa L. Caldwell (Bar #91163)
Email: theresa@specedattorney.com

*Attorney for Parent* 

## CERTIFICATE OF SERVICE

This will certify that a copy of the above and foregoing instrument was served upon the ADE and District via email to their representative listed below on this 24th day of August, 2020.

Mr. Rick Porter
Arkansas Department of Education
Office of Special Education Dispute Resolution Director
Email: brenda.watson@arkansas.gov

Mr. Jay Bequette
Bequette, Billingsly & Kees, P.A.
Email: jbequette@bbpalaw.com

Mr. Michael McCauley
ADE Hearing Officer
Email: mccauley13@hotmail.com

/s/ Theresa L. Caldwell
Theresa L. Caldwell

BEFORE THE ARKANSAS DEPARTMENT OF EDUCATION
SPECIAL EDUCATION UNIT

████████ ████████ Parent of )
████ ████████ Student )
)
Petitioner/Parent, )
)
vs. )   Case No. H-21-04
)
CABOT SCHOOL DISTRICT, )
)
Respondent/District. )
_____ )

## MOTION TO DISMISS AND NOTICE OF PETITIONER'S FAILURE TO MEET SUFFICIENCY REQUIREMENTS OF SUBSECTION (b)(7)(A) OF SECTION 615 PUBLIC LAW 105-17

Cabot School District ("District"), by its attorneys, Bequette, Billingsley & Kees, P.A., for its Motion to Dismiss and Notice of Petitioner's Failure to Meet Sufficiency Requirements of Subsections (b)(7)(A) of Section 615 Public Law 105-17, alleges and states:

1.      The Due Process Complaint filed herein fails to meet the sufficiency requirements of Subsection (b)(7)(A) of Section 615 Public Law 105-17.

2.      The Student is currently enrolled in The Hannah School, an accredited private school that provides educational services for students with dyslexia in Little Rock, Arkansas. *See* Complaint ¶ 49.

3.      The Student was not placed at The Hannah School by the District but was removed from the District by the Parent and placed there. *See* Complaint ¶ 49.  Accordingly, the Student is no longer the responsibility of the District, as The Hannah School is not in the District.

4.      As Petitioner's daughter no longer attends school in the District, Petitioner is not entitled to a due process hearing and the Due Process Complaint filed herein should be dismissed. It is well settled that if a student changes school districts and does not request a due process hearing

before doing so, the right to challenge prior educational services is not preserved and the petitioner fails to state a claim under the IDEA. *D.L. v. St. Louis City Sch. Dist.*, 950 F.3d 1057, 1059, 2020 U.S. App. LEXIS 6386, *1, 2020 WL 992495; *C.N. v. Willmar Pub. Sch.*, 591 F.3d 624 (8th Cir. 2010); *Thompson v. Special Sch. Dist. No. 1*, 144 F.3d 574 (8th Cir. 1988). In *D.L. v. St. Louis City*, the Eighth Circuit Court of Appeals held that, under the IDEA, the right to challenge prior educational services is forfeited when a student changes school districts prior to requesting a due process hearing. The rule is intended to provide the school district with notice and an opportunity to address the problem.

5.     Here, the principle is the same. Since the due process complaint was filed after the student has enrolled in another school district, the right to challenge prior educational services has been lost. The Student is no longer a resident of the District and not the responsibility of the District. Therefore, the District cannot provide any of the Parent's requested relief and the Complaint must be dismissed.

WHEREFORE, Cabot School District prays that its Motion to Dismiss Due Process Complaint and Notice of Failure to Meet Sufficiency Requirements be upheld; that the relief sought in Petitioner's Due Process Complaint be denied; for the District's attorney's fees and costs incurred herein; that the Due Process Complaint be dismissed in accordance with Subsection (c)(2)(E) of Section 615 Public Law 105-17; and for all other appropriate relief to which the Cabot School District may be entitled.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax:    (501) 374-5092
Email: jbequette@bbpalaw.com

By: *Jay Bequette*
        Jay Bequette, Ark. Bar No. 87012

*Attorneys for Cabot School District*

## CERTIFICATE OF SERVICE

I, Jay Bequette, do hereby certify that a true and correct copy of the foregoing was sent via email to the following on this 21st day of August, 2020:

Theresa L. Caldwell
Caldwell Law Office
14 Alban Lane
Little Rock, AR 72223
Email: tlcatty@gmail.com

Mr. Michael McCauley
Impartial Due Process Hearing Officer
423 South 70th East Avenue
Tulsa, OK 74112
Email: mccauley13@hotmail.com

Matt Sewell, Associate Director
Rick Porter, Administrator
Arkansas Department of Education
Special Education Unit
1401 West Capitol Avenue, Suite 450
Little Rock, AR 72201
Fax: (501) 683-4496
Email: matt.sewell@arkansas.gov
Email: rick.porter@arkansas.gov



3

BEFORE THE ARKANSAS DEPARTMENT OF EDUCATION
SPECIAL EDUCATION UNIT

|  |  |
|---|---|
| ████ ████████ Parent of | ) |
| ████ ████████ Student, | ) |
|  | ) |
| Petitioner, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| CABOT SCHOOL DISTRICT, | ) |
|  | ) |
| District. | ) |
|  | ) |

Case No. H-21-04

### RESPONSE TO DUE PROCESS COMPLAINT

Cabot School District ("District"), by its attorneys, Bequette, Billingsley & Kees, P.A., for its Response to Petitioner's Due Process Complaint ("Complaint"), alleges and states:

1.    The District admits ████ ████████ is the mother and custodial parent of ████ ████████ ("Student"), and admits they reside within the Cabot School District, as alleged in ¶ 1 of Petitioners' Complaint.

2.    The District admits Student completed fourth grade at Southside Elementary School during the 2019-2020 school year and has disabilities as outlined in ¶ 2 of the Complaint. The District is currently without sufficient information to admit all listed diagnoses are accurate and current. The District denies the remaining allegations set forth in ¶ 2 of the Complaint.

3.    The admits it is a Local Education Agency ("LEA") but denies it has failed to provide Student a Free Appropriate Public Education ("FAPE") or violated the Individuals with Disabilities Act in any way, as alleged in ¶ 3 of Petitioner's Complaint.

4.    The District denies that it has refused to identify Student's primary disability; the District denies it has refused to target and intervene appropriately to address her dyslexia or any other disabilities; the District denies it has refused to monitor and address her progress; the District

denies its actions have resulted in Student's reading, math or writing issues. The District denies any remaining allegations contained in ¶ 4(a) of the Complaint.

5.      The District denies it has failed to make a Free Appropriate Public Education available to Student within a reasonable period of time as alleged in ¶ 4(b) of the Complaint and denies that the District should be made to pay for Student's placement at the Hannah School.

6.      The District admits that Student attended Southside Elementary School from Kindergarten through Fourth Grade, but the District denies the remaining allegations contained in ¶ 5 of the Complaint.  Namely, District denies that it ignored Student's family history of Dyslexia and the Parent's request to appropriate assistance.

7.      The District admits that Student received special education services based on a diagnosis of ADHD and was declared eligible to receive such services under the category of Other Health Impairments as alleged in ¶ 6 of the Complaint. The District denies the remaining allegations set forth in ¶ 6 of the Complaint.

8.      The District admits that Student was  identified as Other Health Impaired ("OHI") based on her diagnosis of ADHD but denies that it failed to properly identify Student's disabilities or failed to properly address her learning deficits as alleged in ¶ 7 of the Complaint.  The District denies the remaining allegations set forth in ¶ 7 of the Complaint.

9.      The District admits that its IEP members assessed Student's disabilities and found that her poor attention span exacerbated her progression deficits as alleged in ¶ 8 of the Complaint.

10.      The District admits that it evaluated Student and determined the student had difficulty processing information and decoding words while reading, but otherwise denies that it incorrectly diagnosed Student as alleged in ¶ 9 of the Complaint. The District denies the remaining allegations set forth in ¶ 9 of the Complaint.

2

11.     The District denies that it "refused to acknowledge [Student's] SLDS" or "failed to provide appropriate interventions" to address what had already been recognized on her IEP.  The District asserts these to be unsubstantiated opinions and denies the allegations contained in ¶ 10 of the Complaint.

12.     The District denies that it failed to address Student's deficits; the District denies it failed to conduct progress monitoring on Student's skill levels; the District denies it failed to determine her weaknesses; the District denies it failed to provide appropriate interventions to address her dyslexia which allegedly resulted in a gap in her IQ and achievement; the District denies it would improperly attribute Student's lack of progress to ADHD; as alleged in ¶ 11 of Complaint. The District denies the remaining allegations set forth in ¶ 11 of the Complaint.

13.     The District denies all relief requested in ¶ 12; the District denies it should have to "secure private school placement at public expense" because the District has appropriately addressed Student's educational needs.

14.     The District admits Student was evaluated for by UAMS Dennis Development Center (DDC) on 5/23/2016 as alleged in ¶ 13 of the Complaint.  The District also admits that Student was diagnosed with deficits in attention or concentration.

15.     The District admits Student was referred for evaluation due to academic concerns, and that an evaluation was done 11/30/2016 as alleged in ¶¶ 14 and 15 of the Complaint.  The District also admits that the Wechsler Intelligence Scale, Fifth Edition ("WISC-V"), the Kaufman Test of Educational Achievement, Third Edition ("KTEA-3"), the Behavior Evaluation Scale, Fourth Edition ("BES-4"), and the Clinical Evaluation of Language Fundamentals, Fifth Edition ("CELF-5").

16.     The District admits Student tested in the average range (100-scaled) on the WISC-V, scored below average in processing speed (37%), and scored above average in verbal comprehension (70%) as alleged in ¶ 16 of the Complaint.

17.     The District admits that Student had below average testing on the KTEA-3 but denies that it did not properly follow up with the Student's test scores.

18.     The District admits that Student's first grade teacher reported concerns, as alleged in ¶ 18 of the Complaint.

19.     The District admits the allegations contained in ¶ 19 of the Complaint.

20.     The District admits the allegations contained in ¶ 20 of the Complaint.

21.     The District denies that Student was denied special education services as alleged in ¶ 21 of the Complaint and assert that Student was offered services for ADHD and Other Health Impairments.

22.     Without more information, the District cannot comment on the medical conditions of Student's father, and therefore denies the allegations contained in ¶ 22 of the Complaint.

23.     Without more information, the District cannot comment on the conclusion drawn by the DDC, and therefore denies the allegations contained in ¶ 23 of the Complaint.

24.     Without more information, the District cannot comment on the conclusion drawn by the DDC, and therefore denies the allegations contained in ¶ 24 of the Complaint.

25.     The District admits that it assessed the Student at the Parents request and determined that the Student was slow to complete any task, avoid tasks, struggles to pay attention, and cannot read as alleged in ¶ 25 of the Complaint.

26.     The District admits it conducted a second Psycho-Educational Evaluation of the Student, as alleged in ¶ 26 of the Complaint. The District admits that the second evaluation consisted of the tests listed in ¶ 26 of the Complaint.

27.     The District admits Student took the KTEA-3 and decreased in all domains as alleged in ¶ 27 of the Complaint.

28.     The District admits the allegation contained in ¶ 28 of the Complaint.

29.     The District admits the allegation contained in ¶ 29 of the Complaint.

30.     The District admits the allegation contained in ¶ 30 of the Complaint.

31.     The District admits Student was identified to have difficulty with reading comprehension; the District admits Student had difficulty solving subtraction concepts presented in word format; the District admits Student was able to solve one digit subtraction problems; the District admits Student was identified as "falling below average" in spelling; the District admits Student had difficulty writing sentences; as contained in ¶ 31 of the Complaint.

32.     The District admits that Student's examiner identified a discrepancy between ability and achievement, with a 50% probability that a true discrepancy exists, as alleged in ¶ 32 of the Complaint, but using the examiners own words, the District asserts that this probability is *one criterion* that can be used to identify a specific learning disability.

33.     The District admits that Student had low results in reading, reading comprehension, math problem solving, math calculation, and written expression as alleged in ¶ 33 of the Complaint.

34.     The District admits that the ADE form filled out by DDC confirmed a diagnosis of ADHD as alleged in ¶ 34 of the Complaint.

5

35.    The District admits that the Examiner told the evaluation committee it was up to them to determine if the Student was eligible for special education services, and recommended OHI due to ADHD, as alleged in ¶ 35 of the Complaint.

36.    The District admits that an Evaluation Conference was held on 10/12/2017 and that the team found the Student eligible for disability treatment of the category of OHI, as alleged in ¶ 36 of the Complaint.

37.    The District admits that it constructed Student's IEP to have 300 minutes per week in reading and math, respectively, and 200 minutes per week in written expression.  The District denies it convinced Student's parents that Student would receive more instruction under OHI, as alleged in ¶ 37 of the Complaint.

38.    The District admits Parents signed consent for Student's services as alleged in ¶ 38 of the Complaint.

39.    The District admits that the District team met on 04/01/2020 to review and develop a new IEP for Student for the 2020-2021 school year, as alleged in ¶ 39 of the Complaint.  The District admits that Student's parent expressed concern that Student writes letters and words backwards and that she sometimes doesn't know what day of the week it is, as alleged in ¶ 39 of the Complaint. The District states affirmatively that nothing in the Student's testing indicated that she had dyslexia.

40.    The District admits that progress was made on Student's IEP goals The District denies the remaining allegations set forth in ¶ 40 of the Complaint.

41.    The District denies that it did not provide Parent with any objective test data on Student's academic progress as alleged in ¶ 41 of the Complaint.

42.     The District denies that it failed to determine the skill level at which Student was working as alleged in ¶ 42 of the complaint. The District asserts that Student was assessed according to the specific progress she was supposed to be making according to her personal education plan. The District denies the remaining allegations set forth in ¶ 42 of the Complaint.

43.     The District admits that it assessed Student and determined that her current evaluation was appropriate, and District had the necessary information to outline Student's IEP as alleged in ¶ 43 of the Complaint.

44.     The District admits that in its assessment it determined that Student was making appropriate progress and therefore would not change Student's IEP for the 2020-2021 School year. However, the District denies it predetermined that Student's IEP would remain the same outside of and progress data or additional evaluations, as alleged in ¶ 44 of the complaint. The District denies the remaining allegations set forth in ¶ 44 of the Complaint.

45.     The District admits that it determined that Student would not qualify for Extended School Year services but denies that it just "checked all the boxes" and "predetermined" that Student would not qualify as alleged in ¶ 45 of the complaint.  The District denies the remaining allegations set forth in ¶ 45 of the Complaint.

46.     The District denies that it unilaterally determined no testing was necessary for student as alleged in ¶ 46 of the complaint and assert that the evaluation committee determined they had sufficient information to address the construction of her 2020-2021 IEP. The District denies the remaining allegations set forth in ¶ 46 of the Complaint.

47.     The District is without sufficient information to admit or deny the allegations set forth in ¶ 47 of the Complaint, and therefore denies the allegations.

48.     The District is without sufficient information to admit or deny the allegations set forth in ¶ 48 of the Complaint and therefore denies same.  The District asserts that Student is already receiving 300 minutes per week in reading intervention.

49.     The District denies that it failed to provide a FAPE within a reasonable period of time as alleged in ¶ 49 of the Complaint. The District states affirmatively that the Complaint should be dismissed because it was filed subsequent to the Student's withdrawal from the District and her enrollment in The Hannah School.

50.     The District denies it has the burden of proof.  The District denies that its conduct constitutes disability discrimination under any applicable law.

51.     The District denies all relief requested, specifically, the District denies it should be ordered to pay any fees associated with The Hannah School, the District denies it should have to provide Student transportation to private placement, and District denies that Student is entitled to any relief for any alleged past violations of IDEA.

52.     Except where previously admitted herein, the District denies each and every allegation set forth in the Complaint.

53.     The District reserves the right to plead further by way of amended response or other pleading pending further proceedings in this matter.

### AFFIRMATIVE DEFENSES

54.     The District affirmatively requests Parent provide the District with all evaluations of Student so it can adequately program for Student's needs.

55.     The District affirmatively states that the Complaint is barred by principles of statutory and governmental immunity.

56.     The District affirmatively pleads that Parent has not taken appropriate steps to mitigate any alleged damage and therefore is entitled to no damages whatsoever.

57.     The District affirmatively pleads as a defense the applicable statute of limitations.

58.     The District affirmatively states that any claims for equitable relief are barred as a matter of law.

59.     The District affirmatively states that all actions taken by them were in good faith.

60.     The District asserts that it acted reasonably and in compliance with the law at all times relevant hereto.

61.     The District affirmatively states that the remedies sought in the Complaint are barred by the principle of estoppel.

62.     The District affirmatively states that it did not authorize any unlawful acts set forth in the Complaint.

63.     All claims asserted in the Complaint are barred because the District did not engage in any unlawful conduct, and no act or omission of the District caused any injury, including any injury alleged in the Complaint.

64.     The Complaint fails to allege a basis for the relief claimed, including without limitation, any claims for statutory damages and attorneys' fees.

65.     The District states affirmatively that any alleged violations of Section 504 of the Rehabilitation Act of 1973 are non-justiciable claims under the IDEA and such claims should be dismissed from this proceeding.

66.     The District affirmatively states that it has complied with the IDEA and the regulations implementing the IDEA as set forth by the Arkansas Department of Education.

9

WHEREFORE, Cabot School District prays that the Due Process Complaint be denied and dismissed; for the District's attorney's fees and costs incurred herein; and for all other appropriate relief to which the Cabot School District may be entitled.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax:    (501) 374-5092
Email: jbequette@bbpalaw.com

By: *Jay Bequette*

Jay Bequette, Ark. Bar No. 87012

*Attorneys for Cabot School District*

## CERTIFICATE OF SERVICE

I, Jay Bequette, do hereby certify that a true and correct copy of the foregoing was sent via email to the following on this 21st day of August, 2020:

Theresa L. Caldwell
Caldwell Law Office
14 Alban Lane
Little Rock, AR 72223
Email: tlcatty@gmail.com

Mr. Michael McCauley
Impartial Due Process Hearing Officer
423 South 70th East Avenue
Tulsa, OK 74112
Email: mccauley13@hotmail.com

Matt Sewell, Associate Director
Rick Porter, Administrator
Arkansas Department of Education
Special Education Unit
1401 West Capitol Avenue, Suite 450
Little Rock, AR 72201
Fax: (501) 683-4496
Email: matt.sewell@arkansas.gov
Email: rick.porter@arkansas.gov



10

ARKANSAS DEPARTMENT OF EDUCATION
SPECIAL EDUCATION UNIT



AS PARENT OF

VS.        NO. H-21-04

CABOT SCHOOL DISTRICT

## ORDER SETTING PRELIMINARY TIMELINES

1.      The Parents filed a due process complaint notice with the Arkansas Department of Education (ADE) on **August 13, 2020**. The ADE forwarded the notice to the School District (District) on **August 13, 2020**.

2.      On or before **August 23, 2020**, the District must send a written response to the Parent, with a copy to the hearing officer and the ADE, specifically addressing the issues raised in the complaint. In addition, if the District has not already provided prior written notice regarding the subject matter contained in the Parent's due process complain notice, the prior written notice must be sent on or before **August 23, 2020**.

3.      On or before **August 28, 2020**, the District may file a written notice with the hearing officer and parent, with a copy to the ADE, challenging specifically the manner in which the due process complaint notice does not meet the sufficiency requirements of subsection (b)(7)(A) of Section 615 Public Law 105-17.

4.      On or before **September 22, 2020**, if the Respondent challenges the sufficiency of due process complaint notice, the hearing officer must notify the parties in writing, with a copy to the ADE, whether the due process complaint notice meets the requirements of subsection

ADE No. H-21-04 Record, p. 45

(b)(7)(A). The Parent may, if necessary, amend the due process complaint notice in accordance with subsection (c)(2)(E) of Section 615.

5.     On or before **August 28, 2020**, the District must convene a resolution session with the parents and relevant member(s) of the Individualized Educational Program (IEP) team. The parents of the child must be allowed to discuss their complaint and the facts that form the basis of the complaint. The District must be provided the opportunity to resolve the complaint.

6.     The District has until **September 12, 2020**, to resolve the complaint to the satisfaction of the parents.

7.     The resolution session shall not be held of the parents and district agree in writing to waive such meeting, or agree to use the mediation process described in the IDEA.

8.     The District must provide the hearing officer and ADE with copies of the notice of resolution session, of the waiver of meeting executed by the parties, of a written settlement agreement executed by the parties or a written notification that the parties were unable to settle some or all of the issues raised in the due process hearing notice, as applicable.

9.     If the District is unable to resolve the complaint or any portion thereof, the due process hearing may occur as to all unresolved IDEA issues.

10.    On **September 12, 2020**, all applicable timelines for the due process hearing shall commence, including issuance and mailing of a final decision not later than 45 days thereafter, unless extended upon motion of a party for good cause shown.

IT IS SO ORDERED:                    /s/Michael McCauley

                                     _____

                                     Michael McCauley

                                     Hearing Officer

                                     Dated August 13, 2020

## IN THE ARKANSAS DEPARTMENT OF EDUCATION
## SPECIAL EDUCATION DIVISION



§
§
§
§
**Parent**                    §
§          **CASE NO. H-21-_____**
v.                            §
§
**CABOT SCHOOL**              §
**DISTRICT,**                 §
§
**District**                  §

---

## DUE PROCESS COMPLAINT

---

Parent, ████████ ████████████ on behalf of her minor daughter, JILLLAN ████████████ and pursuant to the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, *et* seq., and the implementing state regulations, Arkansas Department of Education Special Education and Related Services Rules (hereinafter "ADE" and "Spec. Ed. Rules") §10.01.7, files this Due Process Complaint and alleges as follows:

### I. PARTIES

1.      ████████ ████████████ is the Mother and custodial Parent of

████ ████ ████ They reside at [address], in the **CABOT SCHOOL DISTRICT** ("District").

2.     ████ ████████ ("██ age 10, (DOB: 04/01/2010), completed the fourth grade at Southside Elementary School during the 2019-20 school year. ████ has medical diagnoses of Developmental Dyslexia and ADHD, Predominantly Inattentive type. The District initially identified ████ with SLDs in Basic Reading, Reading Comprehension, Written Expression, Math Computation and Math Applications.

3.     **CABOT SCHOOL DISTRICT** ("District") is a Local Education Agency ("LEA") as such is defined in 20 U.S.C. §1401(19).  The District is obligated to provide ████ a Free Appropriate Public Education and has failed to comply with the provisions set forth in Part B of the IDEA, Public Law 108-446, 34 C.F.R. Parts 300 and 301 (August 14, 2006) and the regulations implementing the Individuals With Disabilities improvement Act of 2004.

## II.  INTRODUCTION

4.     The Parent brings this Due Process Complaint because:

    a.     The District has refused to identify Jillian's primary disability; refused to target and intervene appropriately to address her dyslexia and other learning disabilities; and refused to monitoring and address her lack of

2

progress which has resulted in her not being able read on grade level; not being able to do calculations and solve math problems on grade level; and not being able to spell and write down her thoughts.

b.   Since the District has failed to make a Free Appropriate Public Education available to ███ within a reasonable period of time - the District should be made to pay for her placement at the Hannah School, a private school which specializes in teaching children with dyslexia.

### III.  FACTUAL CHRONOLOGY

5.   ███ attended Southside Elementary School from Kindergarten through 4th grade - which she just completed.  Despite her struggles to read, ███ was not screened in the early grades for dyslexia.  The District ignored Jillian's family history of dyslexia and the Parent's request that she receive appropriate assistance in Reading. Throughout the five years she has attended Southside Elementary School, ███ never received dyslexia intervention.

6.   Although District testing showed ███ had SLDs in Basic Reading, Reading Comprehension, Written Expression, Math Computation and Math Applications, she was declared eligible to receive special education services under the category of Other Health Impairment ("OHI") based on a diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD").

3

7.      While the IDEA requires that a student be identified under the category that best describes their primary handicapping condition, the District instead identified ███ as "Other Health Impaired" but to her ADHD. This was significant because it allowed the District to escape the various obligations to "teach" ███ how to read, write, and do math by blaming her lack of progress on her ADHD.

8.      According to the District's IEP members, Jillian's disability affects her education as follows:

Jillian's disability impacts the way she processes information. This affects her ability to decode words, understand what she reads, and hear sounds in words to spell. This difficulty in applying the letter sound connection impacts her ability to read and write classroom setting. Her difficulty with word knowledge, verbal concept formation, and auditory working memory make it difficult for her to process fourth grade level reading materials to understand what she has read or what has been read to her. ***Jillian's disability inhibits her learning due to her poor attention span which in turn interferes with acquisition and retention of new skills/content. This hinders her ability to retain, generate, and manipulate information for use in tasks and interferes with the ability to recognize and or correct mistakes. The diagnosis also impacts the quality of her completed work***.

**PR-3**.

9.      The most significant impacts of Jillian's disability, as described by the District, have nothing to do with ADHD, and everything to do with her dyslexia and SLDs.  The statements about the educational impact of Jillian's

4

ADHD *were unsupported* by the Physician Report or the testing performed as part of the District's evaluation.  The District's testing indicated it was Jillian's SLDs (*and not her ADHD*) that affected the "way she processes information," and "her ability to decode words, understand what she reads, and hear sounds in words to spell." **PR-3**.

10.     The District refused to acknowledge ███ has SLDs - despite their own testing results and failed to provide appropriate interventions to address those on her IEPs to enable her to make progress appropriate in light of her individual circumstances.

11.     The District failed to address Jillian's deficits, failed to conduct progress monitoring on her skill levels; failed to determine her weaknesses, and failed to provide appropriate interventions to address her dyslexia and other SLDs which resulted in the gap between her IQ and achievement widening. When the Parent would try to persuade the District to address Jillian's downward spiral in Reading, the District would attribute the lack of progress to her ADHD, and simply tell her "to complete the work she can."

12.     Parent brings this Due Process Complaint to secure a private school placement at public expense for ███ where her dyslexia and other SLDs can be appropriately addressed and remediated.

## II.  FACTUAL CHRONOLOGY

13.     On 05/23/2016, █████ was evaluated by the UAMS Dennis Developmental Center ("DDC") on referral by Jillian's primary care physician due to suspected ADHD. **PR-38.** █████ was diagnosed with a deficit in attention or concentration, but DDC wanted to rule-out other possible diagnoses (Sensory Processing Disorder and Visual-Spatial Integration Disorder) before concluding █████ has ADHD. **PR-82.**

### First Grade — 2016-2017 School Year

14.     Parent and District personnel referred █████ for evaluation due to concerns about academic performance early in Jillian's first grade year in the District. **PR-82.**

15.     On 11/30/2016, the District conducted a Psycho-Educational Evaluation of █████ It included the Wechsler Intelligence Scale, Fifth Edition ("WISC-V"); the Kaufman Test of Educational Achievement, Third Edition ("KTEA-3"); Behavior Evaluation Scale, Fourth Edition ("BES-4"); and, Clinical Evaluation of Language Fundamentals, Firth Edition ("CELF-5").

16.     On the WISC-V, █████ obtained a Full Scale IQ of 100, within the average range of intellectual ability. Jillian's domain scores ranged for the 37th percentile in Processing Speed to the 70th percentile in Verbal

6

Comprehension. The average percentile rank was the 55th percentile. **PR-84**.

17.    On the KTEA-3, ███ consistently underachieved. Jillian's subtest scores ranged from the 16th percentile to the 70th percentile, but the average percentile rank was the 27th percentile. ███ scored in the 70th percentile in Phonological Processing. This score was an outlier that merited further investigation and discussion, but the District ignored this obvious discrepancy. **PR-85**.

18.    On the BES-4, Jillian's first grade teacher reported she had a "serious level of concern" in four of five areas: Learning Problems, Interpersonal Relations, Inappropriate Behavior, and Unhappiness/Depression. The District described the teacher's report in the area of Physical Symptoms/Fear as "statistically atypical." **PR-86**.

19.    On the CELF-5, the District reported that ███ "passed the language screener" with a score above 13 (18). **PR-86**.

20.    Based on this data, the District reported that ███ did not qualify for special education services. **PR-86**.

21.    On 12/14/2016, the District IEP team decided that ███ did not qualify for special education services. **PR-56**.

22.    On 04/25/2017, Dennis Developmental Center ("DDC") conducted follow-up testing on ███ due to Parent's concerns about her early reading

7

skills and possible dyslexia. **PR-42**. DDC noted that Jillian's father experienced similar dyslexia-like reading problems, though not as severe as ████ **PR-42**.

23.    The DDC administered the Woodcock Johnson Test of Achievement, Fourth Edition ("WJA-4"), and, the Wechsler Individual Achievement Test, Third Edition ("WIAT-3"). The test results were subjected to regression analysis. The DDC reported that Jillian's "underachievement in Basic Reading Skills is severe, but not severe enough to meet the IQ-achievement discrepancy criterion for a specific learning disability in basic reading skills." **PR-45**.

24.    On 05/19/2017, DDC conducted additional testing of ████ administering the Stanford-Binet Intelligence Scale, Fifth Edition ("SB-5"). The results were again subjected to regression analysis. **PR-53-54**. Based on this regression analysis, DDC found "there was a severe discrepancy between [Jillian's] IQ of 112 and the combined Basic Reading Skill Composites . . ." **PR-73**. The "Probability the Discrepancy is Severe" was 99.5%. **PR-54**.

### Second Grade – 2017-2018 School Year

25.    Based on DDC's findings, the Parent again referred ████ for special education evaluation at the start of second grade. According to District,

Parent reported that ███ was "very slow to complete any task," tries to avoid tasks, struggles to pay attention, and cannot read ("DIBELS in the red"). **PR-72**.

26.    On 09/12-13/2017, the District conducted a second Psycho-Educational Evaluation of ███ using a different evaluator. The Evaluator administered the following battery of tests: KTEA-3; Conner Reading Scales, Third Edition ("CRS-3"); Test of Auditory Processing Skills, Third Edition ("TAPS-3"); Criterion Test of Basic Skills, Second Edition ("CTBS-2"); and, the Woodcock Johnson Test of Achievement, Fourth Edition ("WJA-4").

27.    On the KTEA-3, Jillian's scores decreased in all domains, as shown on the table below.

| Domain | 2016 | 2017 |
|---|---|---|
| Reading Composite | 87 | 76 |
| Sound-Symbol Composite | 98 | 89 |
| Decoding Composite | 86 | 79 |
| Math Composite | 88 | 79 |
| Written Language Composite | 86 | 72 |

**PR-74, 85**.

28.    On the CRS-3, Jillian's second grade teacher reported "very elevated" concerns in the areas of Inattention, Learning Problems, and Executive Functioning. ███ was rated "within normal limits" in the areas of Hyperactivity/Impulsivity, Defiance/Aggression, and Peer Relations. **PR-75**.

9

29.     On the TAPS-3, the District reported that Jillian's overall memory

skills, word memory and sentence memory were in the average range and

that her auditory short term memory and auditory working memory were "at

the lower limits of average." **PR-75**.

30.     On the CBTS-2, the District reported:

██████ has mastered upper case and lower case letter recognition.
Although for both upper case and lower case, she was not able to
correctly name the letter "y". She has mastered consonant and vowel
sounding skills, but again did have difficulty with the letter "y". ██████
has mastered two-letter and three-letter blending skills, but did so
slowly. Reading words with consonant blends falls at instructional
level. She does not automatically recognize these beginning blends as
she has to individually sound out each letter first before blending
them. Reading consonant vowel consonant e (CVCe) words and
reading words with long vowel pairs falls at the level of frustration.

**PR-75**.

31.     On the WJ-IV, the District only reported Jillian's cluster scores: 90 for

math and 87 for written language. The District provided the following

narratives describing the results of each subtest:

*Passage Comprehension* requires the ██████ to demonstrate
understanding of a passage by identifying a missing key word that
makes sense in context. This subtest is a measure of reading
comprehension and word knowledge. ██████ earned a very low score
for this skill. She was not able to read any of the passages in order to
supply a missing key word, even with picture clues available. She was
able to read some words and point to a corresponding picture.

*Applied Problems* measures single-step and multi-step problem
solving and problem solving involving money, time, measurement,
and geometrical concepts. In the area of applied problems, ██████ had

10

difficulty with subtraction concepts presented in word format as well as concepts involving coin recognition. She was able to answer a question involving recognition of time to the hour.

*Calculation* measures the ability to perform mathematical computations. ███ was able to answer some of the addition and subtraction one-digit problems presented. She attempted these problems by using her fingers more so than for the KTEA-3.

Spelling measures the ability to combine letters to form correct words. ███ earned a score falling Below Average. She was able to spell three of the words asked. She again used an "f" for /th/.

*Writing Samples* measures the ability to compose and express ideas in writing. When writing, ███ used more reversals than on any other subtest. She attempted to write sentences, some of which tended to be phonetic even though many vowels were omitted in some of the words. She does not capitalize at sentence beginnings or punctuate at sentence endings.

**PR-75-76**.

32.    Based on the KTEA-3, the Examiner reported ███ had:

[A] severe discrepancy between ability and achievement at the 1.75 standard deviation level with a 50% probability that a true discrepancy exists, Jillian's basic reading, reading comprehension, math problem solving, math calculation, and written expression scores are severely discrepant from measured ability (using the SB5). *This is one criterion that can be used for the establishment of a specific learning disability resulting in consideration of eligibility for special education services.*

**PR-76**.

33.    The District's regression analysis showed that ███ had *severe discrepancies - SLDs - in basic reading, reading comprehension, math problem solving, math calculation, and written expression.* **PR-68**.

11

34.    As part of their evaluation, the Examiner requested and obtained a

"Physician Report." The ADE Form filled out on 09/18/2017 by DDC

confirmed a diagnosis of "ADHD, Inattentive type," and indicated "the

school should anticipate: *No attendance problems; Inability to attend a task*

*for a long period of time; Difficulty completing school work; and*

*Disorganized in work activities*." **PR-70**.

35.    In her Report, the District's Examiner concluded:

While ultimate determination of the existence of a primary disability
is the responsibility of the evaluation committee, these test results
suggest possible eligibility for special education services. The
committee may want to consider an Other Health Impairment due to
ADHD as opposed to a Specific Learning Disability given the
widespread deficits in achievement that are evident.

 **PR-77**.

36.    On 10/12/2017, an Evaluation Conference was held at which time the

IEP team found that "[e]valuation data substantiate the existence of a

disability consistent with state and federal regulations implementing IDEA,"

finding her eligible under the category of Other Health Impaired ("OHI").

37.    The District members of the IEP Team assured the Parent that under

the OHI category, ███ would actually receive *more* services than she

would under SLD.  The IEP developed at the Evaluation Conference

indicated ███ would receive direct instruction in reading (300 minutes per

12

week), direct instruction in math (300 minutes per week) and direct

instruction in written expression (200 minutes per week). **PR-17**.

38.    The Parent signed consent for Jillian's "Initial Placement" with

special education services. **PR-19**.

39.    On 04/01/2020, the District IEP team met to review Jillian's progress

and develop a new IEP for the upcoming 2020-2021 school year. At the

meeting, the Parent continued to express her concerns that ████ had

dyslexia which was not being addressed.  According to the District, Parent

provided the following input:

Mrs. ████████ is having outside testing done to get some answers about
Jillian's learning disabilities. She is concerned that ████ writes letters and
words backwards or that she doesn't know what day of the week it is at
times. She said that Jillian's spacing has gotten better in her writing. Mom
has taken ████ off ADHD medication until they go back to the doctor.

**PR-1**.

40.    Parent does not know whether ████ mastered her goals and

objectives on her 2019-2020 IEP. While the District purported to report

progress on Jillian's IEP goals, the progress is reported as a percentage (e.g.,

25% for "solve 1 step work problems using a known strategy) without the

percentage goal, and the District does not report whether ████ mastered

any goals or objectives.  **PR-22**.

41.    Similarly, the District provided Parent no objective test data on

13

Jillian's academic progress. While the District noted in the IEP that "MAPS" tests were administered in math and reading, the IEP does not include *any actual test scores*. **PR-2**.

42.     Moreover, there is no context for qualitative data included on Jillian's IEP. For example, the District stated that ▮ can "solve one step addition and subtraction word problems," but there is nothing in the IEP indicating the grade-level of this skill. **PR-2**. In other words, Parent cannot determine whether ▮ has progressed to grade-level skills or whether she remains significantly behind her peers in achievement (despite average intelligence).

43.     The District IEP team decided that ▮ "current evaluation results are appropriate (sic) and no further testing is needed at this time." **PR-31**.

44.     The District did not need any progress data or additional evaluations because it predetermined[1] that Jillian's programming and placement would be unchanged for 2020-2021. The District's Notice of Action stated:

> ▮ will continue to receive 30 minutes five times a week for writing, 60 minutes a day five times a week for literacy, and 30 minutes a day five times a week for math at Southside Elementary for the remainder of the 2019-2020 school year. ▮ will also continue to receive the following direct instruction for the 2020-2021 school

---

[1] This was a procedural violation that caused a deprivation of educational benefit and significantly impeded Parent's opportunity to participate. *See M.M. v. Dist. 0001 Lancaster Cty. Sch.*, 702 F.3d 479, 488 (8th Cir. 2012) ("A school district cannot predetermine the educational program for a disabled ▮ before meeting with parents. *Deal*, 392 F.3d at 859. Such a predetermination could amount to a procedural flaw in the IEP because it could deprive parents of a meaningful "opportunity to participate in the formulation process." *Gray*, 611 F.3d at 424 (citation omitted).").

year at Cabot Middle School South. The committee agreed that ▮▮▮
will be served for 90 minutes a day five times a week for literacy and
90 minutes a day five times a week for math. She will also receive
para support for Science and Social Studies five times a week.

**PR-31**.

45.    The District also predetermined[2] whether ▮▮▮ would qualify for

Extended School Year ("ESY") services.  The District checked all the boxes

indicating ▮▮▮ did *not* need ESY services, but there is no supporting data.

*See* ADE Spec. Ed. Rules §19.09.1 ("The IEP Team must determine a child's

eligibility for ESY services by collecting and analyzing a variety of data,

including, but not limited to, the child's disability, educational history and

present educational functioning.").

46.    Although ▮▮▮ was due for reevaluation in September 2020. *See* 20

U.S.C. §1414(a)(2)(B)(ii) (must reevaluate "at least once every 3 years"),

the District unilaterally determined no testing was necessary.

47.    The Parent took ▮▮▮ to DDC on May 12, 2020 where a

Neuropsychological Evaluation was performed. The results of her testing

indicated "Jillian's neuropsychological/neurocognitive profile provides data

supporting a diagnosis of Frontal lobe and executive function deficit. Her

pattern is also consistent with her previously diagnosed ADHD. ***Given***

***Jillian's long-standing history of problems with reading, previous test***

---

[2] *See* Note 1.

***results, and her neurocognitive profile, her pattern is definitely consistent with a diagnosis of Developmental Dyslexia.***"

48.     DDC's recommendation stated: "[i]t is very important that the school maintain an IEP for ███ ***Given her diagnosis of Developmental Dyslexia, she needs to receive all available intervention in the area of reading.***"

49.     After 5 years in the Cabot School District and as a result of the District's failure to make a FAPE available within a reasonable period of time, ███ has been placed in a private school where she can receive appropriate dyslexia intervention.

### III.  ISSUES PRESENTED[3]

I.    **WHETHER THE DISTRICT FAILED TO MAKE A FAPE AVAILABLE TO ███ IN A TIMELY MANNER; AND IF SO, WHETHER THE HANNAH SCHOOL IS AN APPROPRIATE PLACEMENT?**

### BURDEN OF PROOF

ADE Special Education Rule §10.01.31.1 states that the impartial due process hearing officer "shall determine which party bears the burden of proof in regard *to the particular issues raised*." (emphasis supplied). Parent alleges the District committed both procedural and substantive violations. As the party seeking relief, Parent bears the burden of proof on procedural violations. *Shaffer v. Weast,*

---

[3] *See M.C. v. Antelope Valley Union High Sch. Dist.,* 858 F.3d 1189, 1196 n.2 (9th Cir. 2017) ("A party bringing a due process complaint is entitled to frame the issues it wishes to present . . . .").

16

546 U.S. 49, 61 (2005). In *Shaffer v. Weast*, the Supreme Court acknowledged that some states had by rule shifted the burden of proof to school districts under certain circumstances. 546 U.S. at 61-62 ("Because no such law or regulation exists in Maryland, we need not decide this issue today."). *See Brennan v. Reg'l Sch. Dist. No. Bd. of Educ.*, 531 F. Supp. 2d 245, 267 (D. Conn. 2008) ("The court finds persuasive Justice Breyer's analysis in *Schaffer* (which the Supreme Court majority did not address given its disposition of the case), which concluded that IDEA's model of cooperative federalism did not intend to preempt states' abilities to determine the burden of proof for themselves. *See Schaffer*, 546 U.S. at 67–71, 126 S.Ct. 528 (Breyer, J., dissenting).").

ADE has by rule shifted the burden of proof to the District to prove its proposed IEP meets its substantive obligations. The IDEA imposes two substantive obligations on the District. First, the IDEA requires an "appropriate" IEP – an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206–07 (1982). *See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017). Second, the IDEA requires a "necessary" educational placement – the least restrictive environment ("LRE"). *See* 20 U.S.C. §1412(5)(A); *See L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 975 n.13 (10th Cir. 2004). Accordingly, ADE Special Education Rule §10.01.09.1.G. requires the District to "[p]rovide evidence and

17

testimony at the hearing to show that the proposed course of action is necessary and appropriate." Accordingly, the District bears the burden of prove that Jillian's 2020-2021 IEP is "appropriate" and Jillian's educational placement is the LRE.

### DISABILITY DISCRIMINATION

The District was deliberately indifferent in addressing Jillian's SLDs and specifically refused to conduct required dyslexia screening. This intentional ignorance on the part of the District to thwart their obligation to provide tailored appropriate instruction and programming to address this Student's dyslexia has resulted in actual harm and trauma, and constitutes disability discrimination in violation of §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a), and Title II of the Americans' with Disabilities Act, 42 U.S.C. §12131-12165. A due process hearing officer in Arkansas has no jurisdiction over disability discrimination claims. *See* ADE Spec. Ed. Rules §10.01.22.1. Accordingly, to the extent Parents' Due Process Complaint raises disability discrimination claims, those claims should be dismissed, and Parent should be found to have exhausted her administrative remedies as required by 20 U.S.C. §1415(l).

## IV.  RELIEF REQUESTED

Parent respectfully requests that the District be ordered to:

1.      Provide payment (or reimbursement to the Parent) for registration, testing, tuition, and fees required for ▮▮▮ to attend the Hannah School for

18

the 2020-2021 school year and each year thereafter until she is on grade level and can return to the District. Parent applied and was notified over the Summer that ███ would received the Succeed Scholarship which will pay the majority of her private school tuition at the Hannah School. In lieu of compensatory education for the denial of FAPE, the Parent requests the District be ordered to pay the remaining private school tuition and fees due each school year until ███ is on grade level and can return to the District; and

2.      Provide ███ transportation and/or reimbursement to and from the Hannah School for the 2020-21 school year and until she is on grade level and can return to the District; and

3.      All other necessary and proper relief to compensate ███ for past deprivations of a FAPE and to provide ███ a FAPE in the future, and,

4.      Provide Parent and ███ all other just and proper relief to which they may be entitled.


Respectfully Submitted,

**Caldwell Law Office**
14 Alban Lane
Little Rock, Arkansas 72223
Phone (501) 414-0434
Fax: (501) 325-1502

/s/ Theresa L. Caldwell
Theresa L. Caldwell (Bar #91163)

19

Email: theresa@specedattorney.com

*Attorney for Parent* ███████ ████████

## CERTIFICATE OF SERVICE

This will certify that a copy of the above and foregoing instrument was served upon the ADE and District via email to their representative listed below on this 13th day of August, 2020.

Arkansas Department of Education
Rick Porter
Dispute Resolution Director
Office of Special Education
Little Rock, Arkansas 72203
Email: rick.Porter@arkansas.gov
Email: brenda.watson@arkansas.gov


Tony Thurman, Superintendent
Cabot School District
Email: tony.thurman@cps.k12.ar.us


/s/ Theresa L. Caldwell
Theresa L. Caldwell

20