IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DOE, C.P., Individually and as
Parent and Next Friend of J.P.                                    PLAINTIFF

v.                              Case No. 4:20-cv-01233 KGB

JOHNNY KEY, in his Official Capacity as
Commissioner of Education and Secretary
of the Arkansas Department of Education
and CABOT SCHOOL DISTRICT                                 DEFENDANTS

## OPINION AND ORDER

Before the Court is a motion for judgment on the record filed by plaintiffs C.P., individually and as parent and next friend of J.P. (Dkt. No. 20). Separate defendant the Cabot School District ("District") and separate defendant Johnny Key, in his official capacity as Commissioner of Education and Secretary of the Arkansas Department of Education ("ADE"), filed responses to plaintiffs' motion for judgment on the record (Dkt. Nos. 23, 26). Plaintiffs replied (Dkt. Nos. 29, 32). Plaintiffs submitted two notices of recent decisions for consideration (Dkt. Nos. 33, 43). For the following reasons, the Court denies plaintiffs' motion for judgment on the record (Dkt. No. 20).

### I.    Factual And Procedural Background

J.P., the daughter of C.P., attended Southside Elementary School in the District from kindergarten through fourth grade (Dkt. No. 20-1, at 50). J.P. completed the fourth grade at Southside Elementary School during the 2019-2020 school year (*Id.*).

In this litigation, the parties agree on the following material facts. The parties agree that C.P. removed J.P from the District and enrolled J.P. in the Hannah School (Dkt. No. 25, ¶ 1). On August 13, 2020, C.P. filed a due process complaint against the District alleging it failed to make

a free appropriate public education ("FAPE") available to J.P. in a timely manner and seeking private school tuition reimbursement and concomitant relief pursuant to 20 U.S.C. § 1412(10)(C)(ii) (*Id.*, ¶ 2).  On August 21, 2020, the District responded to C.P.'s due process complaint admitting that "they reside within the Cabot School District as alleged in ¶ 1 of Petitioner's Complaint." (*Id.*, ¶ 3).  The Hannah School is a private school and not a school district (*Id.*, ¶ 4).

More specifically, the administrative record supports that, on August 13, 2020, plaintiffs filed an administrative due process complaint with the ADE, alleging that the District violated the Individuals With Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), by failing to make a FAPE available to J.P. "within a reasonable period of time." (Dkt. No. 20-1, at 51).  Plaintiffs in their due process complaint alleged that the District:

> [R]efused to identify [J.P.'s] primary disability; refused to target and intervene appropriately to address her dyslexia and other learning disabilities; and refused to monitoring [sic] and address her lack of progress which has resulted in her not being able to read at grade level; not being able to do calculations and solve math problems on grade level; and not being able to spell and write down her thoughts.

(*Id.*, at 50–51).  For relief, plaintiffs requested that the District be ordered to provide:  (1) payment for registration, testing, tuition, and fees required for J.P. to attend the Hannah School for the 2020–2021 school year and each year thereafter until she is on grade level and can return to the District; (2) transportation and/or reimbursement to and from the Hannah School for the 2020–2021 school year and until J.P. is on grade level and can return to the District; and (3) all other necessary and proper relief to compensate J.P. for past deprivations of a FAPE and to provide a FAPE in the future (*Id.*).

As set forth above, the District responded to plaintiffs' due process complaint on August 21, 2020, admitting that "they reside within the Cabot School District, as alleged in ¶ 1 of

Petitioner's Complaint." (*Id.*, at 36).  The District also filed a "Motion To Dismiss And Notice Of

Petitioner's Failure To Meet Sufficiency Requirements Of Subsection (b)(7)(A) Of Section 615

Public Law 105-17." (*Id.*, at 33–34).[1]   The District moved for dismissal of the due process

complaint on the following grounds:

> 2.    The Student is currently enrolled in The Hannah School, an accredited
>       private school that provides educational services for students with dyslexia
>       in Little Rock, Arkansas.  *See* Complaint ¶ 49.
>
> 3.    The Student was not placed at The Hannah School by the District but was
>       removed from the District by the Parent and placed there.  *See* Complaint ¶
>       49.  Accordingly, the Student is no longer the responsibility of the District,
>       as The Hannah School is not in the District.
>
> 4.    As Petitioner's daughter no longer attends school in the District, Petitioner
>       is not entitled to a due process hearing and the Due Process Complaint filed
>       herein should be dismissed.  It is well settled that if a student changes school
>       districts and does not request a due process hearing before doing so, the
>       right to challenge prior educational services is not preserved and the
>       petitioner fails to state a claim under the IDEA. . . .  The rule is intended to
>       provide the school district with notice and an opportunity to address the
>       problem.

(*Id.*, at 33–34).  The District asserted that, because the due process complaint was filed after C.P.

removed J.P. from the District and enrolled J.P. at the Hannah School, "the right to challenge prior

educational services has been lost." (*Id.*, at 34).

On August 25, 2020, the due process hearing officer ("HO") emailed plaintiffs the

following question:  "What date did the student enroll and begin receiving services at the Hannah

School?" (*Id.*, at 19).  Plaintiffs objected to providing the exact date that J.P. was enrolled at the

---

[1]    Subsection (b)(7)(A) includes:  "[p]rocedures that require either party, or the attorney
representing a party, to provide due process complaint notice in accordance with subsection (c)(2)
. . . ."  20 U.S.C. § 1415(b)(7)(A).  Subsection (c)(2) provides that "[t]he due process complaint
notice required under subsection (b)(7)(A) shall be deemed to be sufficient unless the party
receiving the notice notifies the hearing officer and the other party in writing that the receiving
party believes the notice has not met the requirements of subsection (b)(7)(A)."  20 U.S.C. §
1415(c)(2).

Hannah School, stating, "[C.P.] has the right to unilaterally remove J.P. from Cabot, enroll her in a private school, and seek reimbursement for private school tuition." (*Id.*). Plaintiffs admitted that J.P. "was not placed at the Hannah School by the District; but rather, [C.P.] enrolled [J.P.] in the Hannah School . . . ." (*Id.*, at 26).

On August 28, 2020, the HO issued a pre-hearing order setting a due process hearing for September 16–18, 2020 (*Id.*, at 16–17). In addition, the HO directed the parties to submit pre-hearing briefs on "the issues to be addressed and the arguments to be presented in the hearing." (*Id.*, at 16).

On September 3, 2020, plaintiffs filed a motion requesting that "judicial notice be taken of the fact that the Hannah School is *not* an Arkansas School District." (*Id.*, at 3–4) (emphasis in original). That same day, the HO issued the following Order:

> NOW on this 3rd day of September, 2020, this cause was submitted upon the pleadings, argument of Petitioner and Respondent, and other matters and things from all of which the Hearing Officer Orders the above styled action is hereby Dismissed with Prejudice. The decision of this Hearing Officer is final and shall be implemented unless a party aggrieved by it shall file a civil action in either Federal District Court or a State Court of competent jurisdiction pursuant to the Individuals with Disabilities Act within ninety (90) days after the date on which the Hearing Officer's decision is filed with the Arkansas Department of Education. Pursuant to Section 10.01.36.5, *Special Education and Related Services: Procedural Requirements and Program Standards*, Arkansas Department of Education 2008, the Hearing Officer has no further jurisdiction over the parties to the hearing.

(*Id.*, at 1).

On October 15, 2020, plaintiffs timely filed the instant action against Mr. Key in his official capacity as Commissioner of Education and Secretary of the ADE and the District seeking relief based on the following claims: (1) a claim pursuant to the IDEA for allegedly denying J.P. her right to a FAPE; (2) a claim pursuant to 42 U.S.C. § 1983 for purportedly denying plaintiffs their right to due process pursuant to the Fourteenth Amendment; (3) a claim pursuant to 29 U.S.C. §

4

701 *et seq.* ("Section 504"), and 42 U.S.C. §§ 12131-12165 ("Title II"), for alleged disability discrimination; and (4) a claim pursuant to 28 U.S.C. §§ 2201-2202 for declaratory and related relief (Dkt. No. 1).

Plaintiffs now move for judgment on the administrative record (Dkt. No. 20). Plaintiffs ask that the HO's order dismissing C.P.'s due process complaint be reversed and that the case be remanded to ADE for a due process hearing with instructions that it be assigned to a different hearing officer (Dkt. No. 20, ¶ 17).

## II.    Standard Of Review

Under the IDEA, a party may appeal from the state administrative proceedings to a federal district court. 20 U.S.C. § 1415(i)(2)(A). The Eighth Circuit has explained that a district court's role in reviewing a claim brought under the IDEA is to receive the records of the administrative proceedings, to hear additional evidence at the request of a party, and to grant such relief as the court determines is appropriate based on the preponderance of the evidence. *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 803 (8th Cir. 2011); *see also* 20 U.S.C. § 1415(i)(2)(C).

In this case, plaintiffs move for a judgment on the record in the context of this IDEA case. Under this form of review, the Court may make a decision on the merits, even if there exist, upon the stipulated record, disputed issues of material fact. *Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 561 (8th Cir. 1996).

## III.    Discussion

Plaintiffs assert that the HO erred as a matter of law in dismissing C.P.'s due process complaint because C.P. placed J.P. in a private school (Dkt. No. 20, ¶ 13). Plaintiffs contend that the District remains responsible for providing J.P. a FAPE because, as the District admitted, "they reside within the Cabot School District, as alleged in ¶ 1 of Petitioner's Complaint." (*Id.*).

Plaintiffs further contend that the HO's "illogical and absurd" decision in this case demonstrates that the HO does not meet the minimum qualifications to serve as a hearing officer pursuant to 20 U.S.C. § 1415(f)(3)(A) and the HO's bias in favor of school districts (*Id.*, ¶¶ 14–15).

For the purpose of resolving plaintiffs' motion for judgment on the record, the Court considers the following threshold matters:  (1) whether J.P. was in the District at the time of the events giving rise to this action, and (2) whether adequate notice to the District of plaintiffs' assertion of denial of a FAPE or request for a due process hearing was provided before J.P. enrolled in the Hannah School.

### A.     Whether J.P. Was In The District

The first question the Court examines is whether J.P. was in the District at the time of the events giving rise to this dispute.  The District asserts that "[i]f a student is no longer enrolled in the District, there is no legal basis for the District to educate the child."  (Dkt. No. 23, ¶ 5).  The District maintains that, although in Arkansas the school district where a student resides is generally responsible for educating the student, that applies "only if the parents decide to enroll their student in the District," and "[o]f course, a parent could decide to homeschool their student or elect for private school."  (*Id.*, ¶ 6).  Plaintiffs maintain that the Hannah School is a private school and *not* a school district under Arkansas law (Dkt. No. 22, ¶ 4).  Mr. Key asserts that "residency alone does not determine responsibility for the education of the student."  (Dkt. No. 26, ¶ 5).

The District relies on *Thompson v. Board of the Special School District No. 1*, 144 F.3d 574 (8th Cir. 1998), for much of its argument.  The Eighth Circuit Court of Appeals in *Thompson* held that "[i]f a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved."  144 F.3d. at 579.  In *Thompson*,

however, the student bringing suit had transferred to a charter school in a different school district. *Id.* at 578–79.  Here, the parties do not dispute that J.P. continued to reside in the District.

Plaintiffs maintain that J.P. did not change school districts under Arkansas law because all parties agree J.P. did not change residence.  Under Arkansas law, public school districts are political subdivisions of the state.  *See Crenshaw v. Eudora Sch. Dist.*, 362 Ark. 288, 295-96 (2005).  At the time of the events giving rise to this dispute, Arkansas Code Annotated § 6-13-101 provided:

> (a) There shall be only one (1) kind of school district in the state, and each shall have the same prerogatives, powers, duties, and privileges as herein set forth.
>
> (b) All school districts which may be hereafter created shall be the same kind, with the same prerogatives, powers, duties, and privileges as provided by law.

Additionally, Arkansas Code Annotated § 6-41-202 provided:

> (a)(1) It is the policy of this state to provide and to require school districts to provide, as an integral part of the public schools, a free appropriate public education for students with disabilities.
>
> (2) The State Board of Education is expressly authorized to assign responsibility for providing free appropriate public education of any child with a disability to an appropriate school district.
>
> . . .
>
> (d) Each public agency in the state is responsible for ensuring that the rights and protections under Part B of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, are given to children with disabilities referred to or placed in private schools and facilities by that public agency or placed in private schools by their parents under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*

In Arkansas, residency determines the appropriate public school district for a child.  *See Crenshaw*, 362 Ark. at 295-96; Ark. Code Ann. § 6-13-101.

Plaintiffs did not change school districts when they enrolled J.P. in a private school while J.P. still resided within the District's boundary.  The District focuses on J.P.'s enrollment status,

but under Arkansas law, that is not the only consideration when deciding whether a student has changed school districts. Residence and the type of school are also necessary parts of the analysis. A private school is not a political subdivision of the state under Arkansas law, so it cannot be considered a school district. It is undisputed that J.P. maintained her residence within the District after C.P. placed J.P. in the private school. Stated differently, C.P. would have been able to enroll J.P. in a school under District's control when the due process complaint was filed.

### B.    Whether J.P. Provided Adequate Notice

The next question the Court examines is whether adequate notice to the District of plaintiffs' assertion of denial of a FAPE or request for a due process hearing was provided before J.P. enrolled in the Hannah School. The Eighth Circuit in *Thompson* determined that the IDEA claim was moot because the plaintiff failed to request a due process hearing before enrolling in a charter school, which was a new school district under that state's controlling law. 144 F.3d at 579.

In contrast to the facts of *Thompson*, with respect to the plaintiff in *Independent School District No. 284 v. A.C.*, 258 F.3d 769 (8th Cir. 2001), the Eighth Circuit drew a distinction and explained:

> A.C.'s due process hearing is over. A.C.'s claim in this case concerns obligations the District allegedly had in the past and failed to meet. The remedy sought is compensatory. It does not matter whether the District has any present or future obligation to develop a new IEP for her or to give her further hearings. If A.C. or her mother had paid the costs of a private placement at the time, and then sued the District for reimbursement, the claim would not be moot. . . . [T]he claim is that the statute obligated the school district to pay for the placement during the time when it was responsible for the A.C.'s education. Assuming that A.C.'s claim has merit, it would not make sense to deny her a remedy against the District just because her parent did not or could not pay for the placement that the District denied her.

258 F.3d at 774–75 (internal citation omitted).

Here, unlike the plaintiff in *Thompson*, J.P. did not enroll in a new school district under Arkansas law. However, unlike the plaintiff in *Independent School District No. 284*, J.P. also did

not have a due process hearing while enrolled in a school under the District's control.  Instead, on the administrative record before the Court, it appears likely that no due process hearing was requested before C.P. enrolled J.P. in the Hannah School.  In other words, plaintiffs appear likely to have first requested a due process hearing from the District after having left the enrollment of a school under the District's control.

The IDEA establishes various procedural safeguards intended to provide parents both an opportunity for meaningful input into decisions affecting their child's education and the right to seek review of decisions they consider inadequate.  *See J.B., ex rel Bailey v. Avilla R-XIII School Dist.*, 721 F.3d 588, 592 (8th Cir. 2013).  These safeguards include:

> the right to examine all relevant records pertaining to the identification, evaluation, and educational placement of their child; prior written notice whenever the responsible educational agency proposes (or refuses) to change the child's placement or program; an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and an opportunity for "an impartial due process hearing" with respect to any such complaints.

*Honig v. Doe*, 484 U.S. 305 (1988) (quoting 20 U.S.C. §§ 1415(b)(1), (2)).

As explained above, the Eighth Circuit in *Thompson* held that, "[i]f a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved."  144 F.3d at 579.  In so holding, the *Thompson* court emphasized that "[t]he purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem," while it has "the opportunity to address the alleged problem."  *Id.* at 579.

This holding has remained settled law in the Eighth Circuit.  *See, e.g., Smith ex rel. Townsend v. Special Sch. Dist. No. 1*, 184 F.3d 764, 768 (8th Cir. 1999) (holding that a district properly dismissed a student's due process proceedings under *Thompson*); *M.P. ex rel. K.P. v.*

*Indep. Sch. Dist. No. 721*, 326 F.3d 975, 981 (8th Cir. 2003) (affirming the dismissal of a student's IDEA claims under *Thompson*); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 631 (8th Cir. 2010) (reaffirming *Thompson* rule in the light of an amendment to Missouri statute).

This Court acknowledges that, if a guardian of a disabled child believes that the school district has failed to provide the child with a FAPE as required under the IDEA, the guardian is permitted to place the child in a private school, at the guardian's own financial risk, and seek tuition reimbursement from the school district. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 237–38 (2009); 20 U.S.C. § 1412(a)(1)(C)(i).  According to plaintiffs, "[p]arents cannot file a due process complaint seeking reimbursement *before* enrolling their child in the private school."  (Dkt. No. 29, at 2).  They contend that § 1412(a)(10)(C)(ii) "clearly contemplates parents withdrawing their student, enrolling the student in a private school, paying tuition, and seeking *reimbursement*."  (Dkt. No. 29, at 3).

20 U.S.C. §1412(10)(C)(ii)-(iii) states:

**(ii) Reimbursement for private school placement.**  If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

**(iii) Limitation on reimbursement.**  The cost of reimbursement described in clause (ii) may be reduced or denied--
(I) if—
(aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or

10

> (bb) 10 business days (including any holidays that occur on a business day)
> prior to the removal of the child from the public school, the parents did not
> give written notice to the public agency of the information described in item
> (aa)

It is true that, if the guardian of a disabled child believes that the school district has failed to provide the child with a FAPE as required under the IDEA, the guardian is permitted to place the child in a private school, at the guardian's own financial risk, and seek tuition reimbursement from the school district. *See Forest Grove*, 557 U.S at 237–38; *see also* 20 U.S.C. § 1412(a)(10)(C)(i) (stating that the IDEA does not "require a [district] to pay for the cost of education, including. . . related services, of a child with a disability at a private school or facility if that agency made a [FAPE] available to the child and the parents elected to place the child in such private school or facility."). However, that seeking tuition reimbursement is permissible under such circumstances does not mean that the claim for reimbursement does not need to be preserved by the timely filing of a complaint. Indeed, *Thompson* involved a claim for certain tutoring costs, and thus the Eighth Circuit addressed the issue of reimbursement in *Thompson*. "Recovering tuition [or costs] is a remedy only if the free and appropriate public education (FAPE) guarantee has been violated, exhaustive administrative remedies have been tried before placement, and the school has been notified." *Thompson*, 144 F.3d at 579 (internal citations omitted). While the statement in *Thompson* regarding tuition may be *dicta*, that statement is consistent with the Eighth Circuit's finding in *Thompson* regarding other costs associated with removing the child from district schools and with the underpinning of the court's rationale: "a school would be potentially liable for unanticipated costs for alleged problems of which it is totally unaware" if parents were allowed to file complaints after the child leaves the district. *Id.*

11

Even after *Forest Grove*, the Eighth Circuit has continued to require the timely filing of a due process complaint before tuition reimbursement or other compensatory relief can be sought. *See, e.g., J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 595 (8th Cir. 2013); *see generally A.H. v. Indep. Sch. Dist.*, 466 S.W.3d 17 (Mo. Ct. App. 2015); *T.B. v. St. Joseph Sch. Dist.*, Case No. 10-0462-CV-J-ODS, 2011 WL 13189762 (W.D. Mo. Apr. 26, 2011).  Further, courts have continued to apply this requirement, even when parents unilaterally enrolled their child in a private school before filing a due process complaint, regardless of whether the complaint is for reimbursement, compensatory education, or both.  *See, e.g., C.N. v. Willmar Pub. Schools, Indep. Sch. Dist. No. 347*, 591 F.3d 624, 632 (8th Cir. 2010); *I.E.C. v. Minneapolis Pub. Sch., Special Sch. Dist. No. 1*, 34 F.Supp.3d 1006, 1016 (D. Minn. 2014).  *A.B. ex rel. Barclift v. Westonka Indep. Sch. Dist. 277*, Civil No. 14-0466 (MJD/HB), 2015 WL 321415, at *4 (Jan. 26, 2015).

The purpose of the *Thompson* rule is in part to "put the school district on notice of a perceived problem," while it has "the opportunity to address the alleged problem."  144 F.3d at 579.  In applying this rule, the court focused on the prospective relief that might result from the hearing, after the school district was put on notice of problems with its prior handling of a student and given an opportunity to correct them.  *Id.*  The court did not consider a claim for compensatory damages for passed IDEA violations.  *Id.* at 580 ("As to compensatory damages, a claim 'based upon defendants' alleged violations of the IDEA may not be pursued in this. . . action because general and punitive damages. . . are not available under IDEA.'" (citing *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996)); *see also M.P. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 979 (8th Cir. 2003) (parents who removed their child from "intolerable situation" at school where he

was verbally harassed and physically assaulted by classmates were barred from bringing IDEA claim against the school since they did not request a due process hearing until after removal).

In a recent decision, the Eighth Circuit restated and reaffirmed the *Thompson* rule: "The right to challenge prior educational services is forfeited when a student changes school districts prior to requesting a due process hearing." *D.L. v. St. Louis City Sch. Dist.*, 950 F.3d 1057, 5069 (8th Cir. 2020) (citing *Thompson*, 144 F.3d at 579). The record in *D.L.* showed that when the parents filed their due process complaint: (1) D.L. was still enrolled with the district; (2) D.L. had not yet enrolled at the private school; and (3) D.L.'s parents had already provided notice to the district at an IEP meeting. *Id.* at 1063. For these reasons, on the record in that case, the Eighth Circuit concluded that the holding in *Thompson* was inapplicable and determined that the district's jurisdictional challenge was "without merit." *Id.*

The Court acknowledges that other federal district court decisions have allowed parents to file complaints after withdrawal of the child from the district. *See, e.g., L.R.L. ex rel. Lomax v. D.C.*, 896 F. Supp.2d 69, 81 (D.D.C. 2012) ("[W]hen a student leaves a school district, which allegedly failed to provide a FAPE, the school district may not avoid its obligations under the IDEA and must provide a due process hearing," even if the due process filing does not come until after withdrawal from that district); *Lewis Cass Intermediate Sch. Dist. v. M.K. ex rel. J.K.,* 290 F. Supp.2d 832, 838 (W.D. Mich. 2003) ("[T]he Court finds no reason that a district should deny a student his right to a due process hearing regarding compensatory educational services simply because the student requested his hearing after, rather than prior to, moving from the district.").

While there is some disagreement among federal district courts, the Eighth Circuit is presently the only federal circuit court to have directly addressed this issue. The law in the Eighth Circuit is clear: An IDEA claim is barred when the guardian does not request a hearing before the

child leaves the district.  The administrative record before the Court contains no document from plaintiffs that evidences notice to the District was provided before J.P. enrolled in the Hannah School.  To the contrary, the Court observes that the HO specifically asked plaintiffs for the date J.P. "enroll[ed] and beg[a]n receiving services at the Hannah School," and plaintiffs objected to providing this information (Dkt. No. 20-1, at 19).  On this record, the Court cannot find that plaintiffs are entitled to the relief they seek.

**III.    Conclusion**

For the foregoing reasons, the Court denies plaintiffs' motion for judgment on the record (Dkt. No. 20).

It is so ordered this 31st day of March, 2023.

_____
Kristine G. Baker
United States District Judge